**Document #1**

**Search Warrant**
**Seized Property**

# UNITED STATES DISTRICT COURT
### for the
### District of Colorado

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched or identify the person by name and address)*<br>6965 S Fultondale Circle, Aurora, Colorado, CO, 80016, more fully described in Attachment A, attached hereto, and to include all out-buildings and vehicles located thereon, and to include the person of Joel Thomas at the time of the search warrant execution. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Case No.  13-sw-05867-BNB |

## SEARCH AND SEIZURE WARRANT

To: Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the ___State and___ District of ___Colorado___
*(identify the person or describe the property to be searched and give its location)*:

### SEE "ATTACHMENT A" attached hereto and incorporated by reference

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*:

### SEE "ATTACHMENT B" attached hereto and incorporated by reference

I find that the affidavit(s), or any recorded testimony, establishes probable cause to search and seize the person or property.

**YOU ARE COMMANDED** to execute this warrant on or before ___November 29, 2013, at 2:00 p.m.___
*(not to exceed 14 days)*

☒ in the daytime  6:00 a.m. to 10 p.m.    ☐ at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to United States Magistrate Judge

___Boyd N. Boland___
United States Magistrate Judge

☐ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*  ☐ for _____ days *(not to exceed 30)*.
☐ until, the facts justifying, the later specific date of _____.

Date and time issued:  ___*3:14 pm, Nov 15, 2013*___

*Boyd N Boland*

Boyd N. Boland            *Judge's signature*
United States Magistrate Judge

City and state:  ___Denver, CO___

*Printed name and title*

AO 93 (Rev. 01/09) Search and Seizure Warrant (Page 2)

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name of any person(s) seized: | | |

**Certification**

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A

### Place to be Searched

The Subject Premises is located at 6965 S Fultondale Circle, Aurora, Colorado, 80016. The Subject Premises is more particularly identified as a single family, two story, residence with red brick and light-colored siding. *The numbers 6965 are affixed to the front of the house over the garage.* The location consists of the subject residence, surrounding property, and all outbuildings and vehicles located thereon. The place to be searched includes the person of Joel Thomas at the time of the search warrant execution.

35

## ATTACHMENT B

### Information to be Seized

The following items, located within the residence at 6965 S. Fultondale Circle, Aurora, Colorado 80016, that constitute evidence of the commission of, contraband, the fruits of crime, or instrumentalities of violations of Title 18 U.S.C. §§ 2251(d)(1) and (e); 18 U.S.C. §§ 2252A(a)(2)(A) and (b)(1); and 18 U.S.C. §§ 2252A(a)(5)(B) and (b)(2):

1.  Images or visual depictions of child pornography.

2.  Records and information containing child erotica, including texts, images and visual depictions of child erotica.

3.  *Any and all information, notes, software, documents, records, or correspondence, in any format and medium, pertaining to violations of 18 U.S.C. §§ 2251(d)(1) and (e); 18 U.S.C. §§ 2252A(a)(2)(A) and (b)(1); and 18 U.S.C. §§ 2252A(a)(5)(B) and (b)(2)?*

4.  Any and all information, notes, documents, records, or correspondence, in any format or medium, concerning communications about child pornography or sexual activity with or sexual interest in minors.

5.  Any and all information, notes, documents, records, or correspondence, in any format or medium, concerning Internet activity reflecting a sexual interest in minors or child pornography.

6.  Any and all address books, names, and lists of names and addresses of individuals who may have been contacted by use of the computer or by other means for the purpose of committing violations of 18 U.S.C. §§ 2251(d)(1) and (e); 18 U.S.C. §§ 2252A(a)(2)(A) and (b)(1); and 18 U.S.C. §§ 2252A(a)(5)(B) and (b)(2).

7.  Any correspondence/records indicating the true identity of any member or user of "Website 15"; and

8.  Any correspondence, e-mails, electronic messages, and records pertaining to "Website 15."

9.  Any and all information, notes, documents, records, or correspondence, in any format or medium, concerning membership in online groups, clubs, websites, or services that provide or make accessible child pornography.

10. Any and all cameras, film, videotapes or other photographic equipment that constitute evidence of the commission of, contraband, the fruits of crime, or instrumentalities of violations of 18 U.S.C. §§ 2251(d)(1) and (e); 18 U.S.C. §§ 2252A(a)(2)(A) and (b)(1); and 18 U.S.C. §§ 2252A(a)(5)(B) and (b)(2).

11. Any and all information, records, documents, invoices and materials, in any format or medium, that concern any accounts with an Internet Service Provider pertaining to violations of 18 U.S.C. §§ 2251(d)(1) and (e); 18 U.S.C. §§ 2252A(a)(2)(A) and (b)(1); and 18 U.S.C. §§ 2252A(a)(5)(B) and (b)(2).

12. *Any and all information, records, documents, invoices and materials, in any format or medium, that concern e-mail accounts, online storage, or other remote computer storage pertaining to violations of 18 U.S.C. §§ 2251(d)(1) and (e); 18 U.S.C. §§ 2252A(a)(2)(A) and (b)(1); and 18 U.S.C. §§ 2252A(a)(5)(B) and (b)(2).*

13. Any and all information, documents, records, or correspondence, in any format or medium, pertaining to occupancy or ownership of the premises and use or ownership of computer equipment found in the premises.

14. Credit cards, credit card information, bills and payment records pertaining to violations of 18 U.S.C. §§ 2251(d)(1) and (e); 18 U.S.C. §§ 2252A(a)(2)(A) and (b)(1); and 18 U.S.C. §§ 2252A(a)(5)(B) and (b)(2).

15. Computer(s), computer hardware, computer software, computer related documentation, computer passwords and data security devices, digital storage media, any physical object upon which computer data can be recorded, gaming devices, digital communications devices, cellular telephones, cameras, videotapes, video recording devices, video recording players, and video display monitors, digital input and output devices such as keyboards, mouse(s), scanners, printers, monitors, electronic media and network equipment, modems, routers, connection and power cords, and external or connected devices used for accessing computer storage media that was used to commit or facilitate commissions of 18 U.S.C. §§ 2251(d)(1) and (e); 18 U.S.C. §§ 2252A(a)(2)(A) and (b)(1); and 18 U.S.C. §§ 2252A(a)(5)(B) and (b)(2).

16. For any computer, computer hard drive, or other physical object upon which computer data can be recorded (hereinafter, COMPUTER) that is called for by this warrant, or that might contain items otherwise called for by this warrant:

   a. evidence of who used, owned, or controlled the COMPUTER at the time the items described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, calendars, browsing history, user profiles, e-mail, e-mail contacts, "chat" or instant messaging logs, photographs, and correspondence;

   b. evidence of software that may allow others to control the COMPUTER, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

   c. evidence of the lack of such malicious software;

   d. evidence of the attachment to the COMPUTER of other storage devices or similar containers for electronic evidence;

   e. evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the COMPUTER;

   f. evidence of the times the COMPUTER was used;

   g. passwords, encryption keys, and other access devices that may be necessary to access the COMPUTER;

   h. documentation and manuals that may be necessary to access the COMPUTER or to conduct a forensic examination of the COMPUTER;

   i. contextual information necessary to understand the evidence described in this attachment;

   j. volatile data necessary to preserve evidence prior to powering-off and unplugging a running computer.

   k. images and visual depictions of child pornography;

   l. records and information containing child erotica, including texts, images and visual depictions of child erotica;

   m. any and all information, notes, software, documents, records, or correspondence, in any format and medium, pertaining to violations of 18 U.S.C. §§ 2251(d)(1) and (e); 18 U.S.C. §§ 2252A(a)(2)(A) and (b)(1); and 18 U.S.C. §§ 2252A(a)(5)(B) and (b)(2);

   n. any and all information, notes, documents, records, or correspondence, in any format or medium, concerning communications about child pornography or sexual activity with or sexual interest in minors;

   o. items otherwise described above in paragraphs 1- 14 of this Attachment B.

<u>DEFINITIONS</u>

As used above, the terms "records" and "information" refer to all forms of creation or storage, any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing); any mechanical form (such as printing or typing); and any photographic form (such as prints, videotapes, motion pictures, or photocopies).

The term "computer" refers to all types of electronic, magnetic, optical, electrochemical, or other high speed data processing devices performing logical, arithmetic, or storage functions: desktop computers, notebook computers, mobile phones, tablets, server computers, smart phones, and network hardware.

*During the course of the search, photographs of the searched premises may also be taken to record the* condition thereof and/or the location of items therein.

FD-597 (Rev 8-11-94)                                                                      Page 1 of 2

# UNITED STATE DEPARTMENT OF JUSTICE
## FEDERAL BUREAU OF INVESTIGATION
Receipt for Property    Received/Returned/Released/Seized

**File #: 305A-DN-3534222**

On (date)    11/25/2013                                    item(s) listed below were:

                                                   ☐ Received From
                                                   ☐ Received To
                                                   ☐ Released To
                                                   ☒ Seized

(Name)              Joel Thomas

(Street Address)    6965 South Fultondale Circle

(City)              Aurora, CO

## Description of Item(s):

Apple desktop computer

Apple laptop computer PWD fa1rdriv

Hard drive (external)

Time Machine

External hard drive

Thumb drive

Multiple computer disks: 15 3 1/2"; 6 CDs

Disposable camera

MP3 player

Sony Cybershot S/N 0270913

Acer computer (Aspire One) S/N LVS700D0539361A1F01601

XB317OYMN1Y Apple tower computer

28 CDs / DVDs

3 USB drives / 1 Hitachi hard drive / 1 SanDisk compact flash drive

SanDisk memory stick from Item 11

3 CDs / DVDs

Seagate 320 GB hard drive white & green Serial # 2G70XED

Olympus camera model #TG610 SN: B7Y519238

SD card inside of Item 19

FD-597 (Rev 8-11-94)                                                                                      Page 2 of 2

## UNITED STATE DEPARTMENT OF JUSTICE
## FEDERAL BUREAU OF INVESTIGATION

Receipt for Property    Received/Returned/Released/Seized

**File #: 305A-DN-3534222**

| |
|---|
| Toshiba hard drive, 60 GB, S/N X3SJ1103T361EC.A |
| Notepad with writing |
| 21 CDs / DVDs |
| Disposable camera |
| USB drive |
| Steno pad |
| 3 CDs / DVDs |

**Received By**    SA Nick Vanicelli

(signature)

**Received From**    Valerie Thomas

(signature)    *Telephonic*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Criminal Action No. 1:19-cr-00397-CMA

UNITED STATES OF AMERICA,

 Plaintiff,

v.

1. JOEL THOMAS,

 Defendant.

---

## PLEA AGREEMENT

---

The United States of America, by and through *Alecia L. Riewerts, Assistant United States Attorney* for the District of Colorado, and Lauren S. Kupersmith, Trial Attorney for the Child Exploitation and Obscenity Section of the U.S. Department of Justice, and defendant, Joel Thomas, personally and through counsel, Douglas I. Richards, Richards Carrington, LLC, submit the following Plea Agreement.

## I. PLEA AGREEMENT

Pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, the parties understand that any recommendations that a particular sentence or sentencing range be imposed pursuant to this Plea Agreement are not binding on the court.

### A. Defendant's Obligations

#### 1. Count of Conviction

The defendant agrees to plead guilty to Count 1 of the Information charging a

1

**COURT EXHIBIT 1**

violation of 18 U.S.C. § 2252A(a)(5)(B) – Access with Intent to View Child Pornography.

The defendant also agrees to admit the Forfeiture Allegation contained in the

Information.

## 2. Waiver of Appeal

The defendant is aware that 18 U.S.C. § 3742 affords the right to appeal the

sentence, including the manner in which that sentence is determined.  Understanding

this, and in exchange for the concessions made by the government in this agreement,

the defendant knowingly and voluntarily waives the right to appeal any matter in

connection with this prosecution, conviction, or sentence unless it meets one of the

following criteria: (1) the sentence exceeds the maximum penalty provided in the statute

of conviction; (2) the sentence exceeds the advisory guideline range that applies to a

total offense level of 26; or (3) the government appeals the sentence imposed.  If any of

these three criteria apply, the defendant may appeal on any ground that is properly

available in an appeal that follows a guilty plea.

The defendant also knowingly and voluntarily waives the right to challenge this

prosecution, conviction, or sentence in any collateral attack (including, but not limited to,

a motion brought under 28 U.S.C. § 2255).  This waiver provision does not prevent the

defendant from seeking relief otherwise available in a collateral attack on any of the

following grounds: (1) the defendant should receive the benefit of an explicitly

retroactive change in the sentencing guidelines or sentencing statute; (2) the defendant

was deprived of the effective assistance of counsel; or (3) the defendant was prejudiced

by prosecutorial misconduct.  Should the plea of guilty be vacated on the motion of the

2

defendant, the government may, in its sole discretion, move to reinstate any or all of the

counts dismissed pursuant to this agreement and charge the defendant with other

violations of law known to the U.S. Attorney's Office for the District of Colorado.

### 3.  Defendant's Abandonment of Right, Title, and Claim to Seized Property

The United States of America and the defendant hereby agree that any property

subject to forfeiture pursuant to 18 U.S.C. § 2253, seized from the defendant, and

currently in the custody and/or control of the Federal Bureau of Investigation (F.B.I.),

was properly seized and that such property constitutes evidence, contraband, or fruits of

the crimes to which the defendant has pleaded guilty.  As such, the defendant hereby

relinquishes all claims, title, and interest the defendant has in such property, specifically

one Apple Macbook A1181 laptop, serial number W88338KC0P1, to the United States

of America with the understanding and consent that the F.B.I., or other appropriate

agency, is to destroy the property described above forthwith without further obligation or

duty whatsoever owing to the defendant or any other person.

As part of the Plea Agreement in this case, the defendant hereby states under

penalty of perjury that the defendant was the sole and rightful owner of the previously

referenced property, and that the defendant hereby voluntarily abandons all right and

claim to this property.

### 4.  Forfeiture of Assets

The defendant agrees to forfeit to the United States immediately and voluntarily

any and all assets and property, or portions thereof, subject to forfeiture, pursuant to 18

U.S.C. § 2253, whether in the possession or control of the United States or in the

3

possession or control of the defendant or defendant's nominees, or elsewhere. The
assets to be forfeited specifically include, but are not limited to: one Apple Macbook
A1181 laptop, serial number W88338KC0P1. The defendant agrees and consents to
the forfeiture of these assets pursuant to any federal criminal, civil, and/or administrative
forfeiture action. The defendant also hereby agrees that the forfeiture described herein
is not excessive and, in any event, the defendant waives any constitutional claims that
the defendant may have.

Forfeiture of the defendant's assets shall not be treated as satisfaction of any
fine, restitution, cost of imprisonment, or any other penalty this Court may impose upon
the defendant in addition to forfeiture.

### 5. Restitution

Defendant acknowledges that pursuant to 18 U.S.C. § 2259(a), the Court is
required to order restitution for the full amount of the victims' compensable losses as
defined at 18 U.S.C. § 2259(b)(3) and (c) as may be proved by the government or
stipulated to by the parties. Defendant will be required to pay restitution for the full
amount of the victims' losses to all victims of the offense(s) to which defendant is
pleading guilty. For purposes of this paragraph, the term "victim" is defined in 18 U.S.C.
§ 2259(c), and the term "full amount of the victims' losses" is defined in 18 U.S.C.
§ 2259(b)(3). Defendant further understands the amount of loss sustained by each
victim will be determined during the course of preparation of the presentence
investigation report.

The defendant acknowledges that as per 18 U.S.C. § 2259(b)(2)(B), the court

4

shall order restitution in an amount which is no less than $3,000 per victim. The

defendant agrees that there is a factual basis for the entry of a restitution award in this

amount for each victim depicted in the child pornography images posted or accessed

with intent to view by the defendant.

Defendant acknowledges that the Court may not decline to award restitution

because of the defendant's economic circumstances or the fact that the victims have, or

are entitled to, receive compensation for their injuries from the proceeds of insurance or

any other source. Defendant agrees to cooperate in the investigation of the amount of

loss and the identification of victims. Defendant understands full restitution will be

ordered regardless of defendant's financial resources. Defendant understands that an

unanticipated amount of a restitution order will not serve as grounds to withdraw

defendant's guilty plea. Defendant further agrees to comply with any restitution order

entered at the time of sentencing. Defendant agrees to cooperate in efforts to collect

the restitution obligation, by any means the United States deems

appropriate. Defendant understands imposition or payment of restitution will not restrict

or preclude the filing of any civil suit or administrative action. Defendant agrees any

restitution imposed will be non-dischargeable in any bankruptcy proceeding and

defendant will not seek a discharge or a finding of dischargeability as to the restitution

obligation.

### B. Government's Obligations

#### 1. Additional Charges

If the defendant enters an unconditional plea of guilty to Count 1 of the

5

Information and otherwise fulfills all obligations outlined above, the government agrees

not to charge the defendant with any other violations of law now known to the United

States Attorney's Office for the District of Colorado.

### 2. Sentencing Position

Provided that the guideline range is calculated consistent with or higher than the

estimated range contained in this agreement, the government also agrees to

recommend a sentence of imprisonment that is at the bottom of that range; however,

the government is not bound to recommend any particular term of supervised release.

Should Probation or the Court determine that the guideline range is lower, the

government reserves its ability to seek an upward variance to the extent necessary to

achieve a sentence consistent with the sentencing range calculated in this agreement.

### 3. Acceptance of Responsibility

If the defendant engages in no conduct that otherwise implicates § 3C1.1, the

government agrees that a 3 point reduction in the offense level for acceptance of

responsibility, pursuant to § 3E1.1, is appropriate and agrees to make the appropriate

motion at sentencing.

### C. Effect of Withdrawal from Plea Agreement

The parties stipulate and agree that the government may unilaterally withdraw

from this Plea Agreement under any of the following circumstances: 1) if the defendant

does not plead guilty to Count 1 of the Information; 2) if the Court does not accept the

defendant's guilty plea; 3) if the defendant successfully withdraws his plea, either in the

district court or on direct or collateral appeal; 4) if the defendant, at any time after

6

judgment is entered, obtains dismissal, reversal or remand of the count of conviction for any reason; or 5) if the court rejects this Plea Agreement (or any part thereof), either before, during, or after sentencing.

## II. ELEMENTS OF THE OFFENSE

The parties agree that the elements of the offense to which this plea is being tendered, the crime of Access with Intent to View Child Pornography, 18 U.S.C. § 2252A(a)(5)(B), are as follows:

*One*: Defendant knowingly accessed with intent to view any material that contained an image of child pornography;

*Two*: That the child pornography has been mailed *or* has been shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means, including by computer; and

*Three*: That when the defendant accessed with intent to view the child pornography, he knew it was child pornography.[1]

"Child pornography" is defined as any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct, where the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct.[2]

"Sexually explicit conduct" means actual or simulated:

---

[1] 18 U.S.C. § 2252A(5)(B); Eleventh Circuit Pattern Jury Instruction O83.4A (2016) [modified]. The Tenth Circuit does not have a pattern instruction on this crime.
[2] 18 U.S.C. § 2256(8)(A).

7

1.     sexual intercourse, including genital-genital, oral-genital, anal-genital, or

        oral-anal, whether between persons of the same or opposite sex; or

2.     bestiality; or

3.     masturbation; or

4.     sadistic or masochistic abuse; or

5.     lascivious exhibition of the genitals or pubic area of any person.[3]

## III. STATUTORY PENALTIES

Based on the defendant's criminal history known at this time, the applicable

maximum statutory penalty for a violation of 18 U.S.C. § 2252A(a)(5)(B) is not more

than 10 years imprisonment, not more than a $250,000 fine, or both. 18 U.S.C. §

2252A(b)(2). Pursuant to 18 U.S.C. § 3583(k), because the defendant is pleading guilty

to violating 18 U.S.C. § 2252A, the term of supervised release is not less than 5 years

and up to a term of life. Defendant will also be required to pay a $100 special

assessment fee.

The parties do not believe the following provision is applicable, but if the

defendant has been previously convicted under Chapter 110, 71, 109A, 117, or under

section 920 of title 10 (article 120 of the Uniform Code of Military Justice), or under the

laws of any State relating to aggravated sexual abuse, sexual abuse, or abusive sexual

conduct involving a minor or ward, or the production, possession, receipt, mailing, sale,

distribution, shipment, or transportation of child pornography, the penalty for a violation

of 18 U.S.C. § 2252A(a)(5)(B) is not less than 10 years nor more than 20 years

---

[3] 18 U.S.C. § 2256(2)(A).

8

imprisonment, not more than $250,000 fine or both.

## IV.    COLLATERAL CONSEQUENCES

The conviction may cause the loss of civil rights, including but not limited to the right to possess firearms, vote, hold elected office, and to serve on a jury. If the defendant is not a United States citizen, this conviction will result in the defendant's removal from the United States once he has completed any sentence of imprisonment.

### A. Future Violations of Supervised Release

If supervised release is imposed, a violation of any conditions of probation or supervised release may result in a separate prison sentence and additional supervision. If a condition of release is violated, the defendant may be sentenced to up to 2 years without credit for pre-release imprisonment or time previously served on post-release supervision.

### B. Registration under the Sex Offender Registration and Notification Act

The defendant has been advised and he understands that under the Sex Offender Registration and Notification Act, a federal law, and pursuant to 18 U.S.C. § 3583(d), upon his release from prison and as a condition of his supervised release, if any, he will be subject to federal and state sex offender registration requirements, and that those requirements may apply throughout his life. The defendant understands he must register as a sex offender and must keep the registration current with the state sex offender registration agency in each of the following jurisdictions: where he was convicted, where he resides, where he is employed, and where he is a student. The defendant understands that the requirements for registration include providing his

9

name, residence address, the names and addresses of any places where he is or will

be an employee or a student, and information relating to intended travel outside the

United States, among other information.  The defendant further understands that the

requirement to keep the registration current includes informing at least one jurisdiction

in which he resides, is an employee, or is a student not later than three business days

after any change of name, residence, employment, or student status.  The defendant

shall comply with requirements to periodically verify in person his sex offender

registration information.  The defendant has been advised, and understands, that failure

to comply with these obligations subjects him to prosecution for violations of applicable

state law or 18 U.S.C. § 2250, a federal law, which is punishable by a fine or

imprisonment, or both.  Defendant further understands that, under 18 U.S.C. § 4042(c),

notice will be provided to certain law enforcement agencies upon release from

confinement following conviction.

## V. STIPULATION OF FACTS

The parties agree that there is a factual basis for the guilty plea(s) that the

defendant will tender pursuant to this Plea Agreement. That basis is set forth below.

Because the Court must, as part of its sentencing methodology, compute the advisory

guideline range for the offense(s) of conviction, consider relevant conduct, and consider

the other factors set forth in 18 U.S.C. § 3553, additional facts may be included below

which are pertinent to those considerations and computations.  To the extent the parties

disagree about the facts set forth below, the stipulation of facts identifies which facts are

known to be in dispute at the time of the execution of the Plea Agreement.

10

The statement of facts herein does not preclude either party from presenting and arguing, for sentencing purposes, additional facts or factors not included herein, which do not contradict the facts to which the parties have stipulated, and which are relevant to the guideline computation under § 1B1.3, or to the sentencing factors found in § 1B1.4, 18 U.S.C. § 3553(a), or to this Court's overall sentencing decision.  In "determining the factual basis for the sentence, the Court will consider the stipulation of the parties, together with the results of the presentence investigation, and any other relevant information."  § 6B1.4 Comm.

The parties agree that the government's evidence would be:

The defendant came to law enforcement attention during the investigation of several anonymous websites linked together through an anonymity network known as "The Onion Router" or Tor.  Tor was originally designed, implemented, and deployed as a project of the U.S. Naval Research Laboratory for the primary purpose of protecting government communications.  It is now available to the public at large.  The Tor network is available to Internet users; it is designed specifically to facilitate anonymous communication over the Internet.  In order to access the Tor network, a user must install computer software that is publicly available, either by downloading software to the user's existing web browser, downloading free software available from the network's administrators, or downloading a publicly-available third-party application.  Using the Tor network prevents someone attempting to monitor an Internet connection from learning what sites a user visits and prevents the sites the user visits from learning the user's physical location.  Because of the way the Tor network routes communication

11

through other computers, traditional IP identification techniques are not viable.

**A.    "Website 15"**

A website on the Tor network known to law enforcement as "Website 15" was an online bulletin board whose primary purpose was to advertise and distribute child pornography and discuss matters pertinent to the sexual abuse of children.  Its true name is known to law enforcement, but investigation into some criminal suspects who were on the website remains ongoing.  On or about August 2, 2013, the computer server hosting "Website 15" was seized from a web-hosting facility.  Law enforcement agents viewed, examined, and documented the contents of "Website 15."  Review of the board activity of the website showed users discussing child pornography as well as posting and sharing such images. The child pornography on the board principally involved lascivious exhibition of the genitalia.

According to statistics posted on the site, "Website 15" contained a total of 3,218 posts, 1,009 topics, 268 total images, and 215 total members as of June 26, 2013.  The initial web page revealed a web page that contained numerous computer-animated images and a hyperlink to access the main site.  The computer-animated images depicted the "ChildLover logo," an image depicting a butterfly with pink and purple wings which is a symbol used by pedophiles to indicate a non-gender preferential sexual interest in children.  Accessing the hyperlink revealed a message board web page with the name of "Website 15." Located directly to the left of the title were images which appeared to depict child pornography and child erotica of prepubescent males and females.  There were

12

no images depicting adults. Located below the title was text explaining that

"Website 15" is open for new members by "Invite Only" and "[t]herefore, if you

wish to join the best little board in Torland, you will need to be recommended by

someone who is already a member." The text also explained:

> ALL NEW MEMBERS are required to post within 14 DAYS OF ACCOUNT
> ACTIVITATION. By post we mean, a picture set, or a video . . . We regularly
> DELETE NON-POSTING members . . . Therefore, please only join if you
> are prepared to become an active poster, and ONLY recommend people
> that you are certain will actually post to the board – your continued account
> depends on it! As you post, and at the discretion of admin, your status will
> change and as it does so, greater access and privileges are afforded to,
> such as the mini-chat, access to the galleries where you can create a
> personal album, and our hidden section such as "AREA 51" . . .

As noted above, "Website 15" operated on the Tor network, available to Internet

users that is designed specifically to facilitate anonymous communication over the

Internet. Websites that are accessible only to users within the Tor network can also be

set up within the network. "Website 15" was one such website. A user can only reach

such websites if the user is operating in the Tor network. Even after connecting to the

Tor network, however, a user must have known the exact web address of such a

website in order to access it. Websites on the Tor network are not indexed in the same

way as websites on the traditional Internet. Accordingly, unlike on the traditional

Internet, a user cannot simply perform a Google search for the name of "Website 15" to

obtain the web address for "Website 15," and click on a link to navigate to "Website 15."

Rather, a user might have obtained the web address for "Website 15" directly from other

users of "Website 15," or from online postings describing both the sort of content

available on "Website 15" and its location. Accessing "Website 15" therefore required

numerous affirmative steps by the user, making it extremely unlikely that any user could have simply stumbled upon "Website 15" without first understanding its content and knowing that its primary purpose was to advertise and distribute child pornography.

**B.    "Website 18".**

A website known to law enforcement as "Website 18" was an online bulletin board whose primary purpose was to advertise and distribute child pornography. Its true name is known to law enforcement, but investigation into some criminal suspects who were on the website remains ongoing. On or about August 2, 2013, the computer server hosting "Website 18" was seized from a web-hosting facility. Law enforcement agents viewed, examined, and documented the contents of "Website 18."

According to statistics posted on the site, "Website 18" contained a total of 70,648 posts, 14,900 total topics, and 945 total members as of June 25, 2013. The initial web page contained the title of the site and a computer-animated image depicting two prepubescent children. Located below the title was an area to register and sign into the site. Users were required to submit applications to be approved for Website 18, post at least once every 30 days, and meet a specified data threshold to be upgraded to accounts with greater accesses and privileges.

"Website 18" also operated on the Tor network. Accessing "Website 18" therefore required numerous affirmative steps by the user, making it extremely unlikely that any user could have simply stumbled upon "Website 18" without first understanding its content and knowing that its primary purpose was to advertise and distribute child pornography.

14

C.   **Anonymous E-mail Server**

    The Anonymous E-mail Service, hereinafter "AES", was a free, anonymous e-mail service provider that operated as a website on the Tor network.  Its true name is known to law enforcement, but investigation into some criminal suspects who used that service remains ongoing.  E-mail accounts on the AES e-mail server contained a username followed by the suffix @AES.net or @AES.org.  This e-mail service was frequently used by individuals engaged in criminal activity, including users of "Website 15" and "Website 18," to avoid detection by law enforcement because it allowed users to conceal their true identities and geographic locations.  The AES website contained a tab where a user could set up a free AES account by creating a unique log-in name and password, as well as links to software programs a user could use to access and use their AES account.  It was clearly noted on the open Internet and the Tor network home pages for the AES that AES did not respond to any legal process nor did it solicit, keep or create any records about any of its users.  On or about August 2, 2013, the computer server hosting AES was seized by law enforcement agents from a web-hosting facility, at which time AES ceased to operate.  The content of the AES e-mail account described below and later identified to belong to Defendant was obtained via a search warrant.

D.   **"BUKETGRL"**

    On May 29, 2012, the user "buketgrl" registered an account on "Website 15." That user included in his registration an AES e-mail account.  The username for this AES account was "buketgrl1@[AES].org."  Between May 29, 2012, and August 5, 2013, "Website 15" user "buketgrl" made a total of 119 postings with 78 attachments, sent 21

private messages, and received 18 private messages.  Examples of these posts and/or private messages are as follows:

- On June 4, 2012, the user "buketgrl" made a post stating, among other things, "Hey Forum, A little about me, I've been collecting since the 90's, however, I had to destroy three drives in the past and re-build my collection due to fear and paranoia, however, with the true crypt and the size of drives, I can have my entire collection on one device now.....My favorite sets are the YVM, LSM 1st studio, webcam of girls 9-14, and of course the classics....Mail – buketgrl1@[AES].org."

- On June 10, 2012, the user "buketgrl" made a post stating, "Hey everyone...I was going thru my collection and decided it needed to be re-organized... How do you keep your files organized...for instance, I have a folder of To Sort, Cream Pie, Boys, PTHC[4], SCCP, Stories, Pics, etc...now some of my folders are getting dis-organized, such as To Sort and Pics...How do you sort yours...do you go as deep as date, age, year, etc...Let us know and maybe we can be more efficient on what is requested and posted....Thanks."  Attached to the post was one image depicting a naked prepubescent female who was sitting on her knees with her legs spread apart, partially exposing her vagina.  The image depicts the lascivious exhibition of the genitals and pubic area of the minor victim.

- On September 18, 2012, the user "buketgrl" made a post in response to the thread titled, "QT of the day – 17th Sept" stating, "Here is mine . . .why not???" Attached to this post was one image depicting a prepubescent female previously identified by law enforcement wearing only a t-shirt, lying on her back with her legs spread exposing her vagina.  The image depicts the lascivious exhibition of the genitals and pubic area of the minor victim.

- On September 24, 2012, the user "buketgrl" made a post with the subject line "QT of the Day – Sept 24th" stating, "Mine after a long weekend!!!!" Attached to this post was one image depicting a prepubescent naked female previously identified by law enforcement lying on her back on a couch with her legs spread exposing her vagina.  The image depicts the lascivious exhibition of the genitals and pubic area of the minor victim.  Another user replied to this post stating, "That looks like Cat Goddess . . . new to me!  Is it a series?" to which "buketgrl" replied, "got them off of a chat BBS . . .so I shared a little . . . thanks [other user]."

- On March 6, 2013, the user "buketgrl" made a post stating, "A little one for you."

---

[4] PTHC stands for "pre-teen hard core", indicating that the child pornography depicts a prepubescent minor is engaged in one or more sex acts with one or more other minors or adults.

Attached to this post was one image depicting two prepubescent females. One of the females was naked lying on her back, slightly upright, with her legs spread apart and bent at the knees, exposing her vagina and anus. The image depicts the lascivious exhibition of the genitals and pubic area of the minor victim.

- On April 23, 2013, the user "buketgrl" made a post stating, "Thanks for playing and surf safe." Included with the post was a hyperlink to an external website that appeared to contain a file that was no longer accessible, along with a password. Attached to the post was one image containing 15 smaller images that appeared to be still-shots of a video depicting an early pubescent female. An example of these images depicts a naked early pubescent female lying on her back in a purple chair with her legs spread apart and raised in the air, exposing her vagina and anus. As such, many of these images depict the lascivious exhibition of the genitals and pubic area of the minor victim.

- On June 19, 2013, the user "buketgrl" made a post stating, "here we go...almost done with what I have of Polina!!!" Included with the post was a hyperlink to an external website that appeared to contain a file that was no longer accessible, along with a password. Attached to the post was one image containing 15 smaller images that appeared to be still-shots of a video depicting an early pubescent female. An example of these images depicts a naked early pubescent female lying on her back on a table with her legs spread apart and raised in the air, exposing her vagina and anus. The image depicts the lascivious exhibition of the genitals and pubic area of the minor victim.

- On July 2, 2013, the user "buketgrl" made a post stating, "Coming up to the last few I have...I know I know we have all seen her, but she is a cutie but this would complete all that I have with one more coming later...If you have more, please fill the rest of her series. Included with the post was a hyperlink to an external website that appeared to contain a file that was no longer accessible, along with a password. Attached to the post was one image containing 15 smaller images that appeared to be still-shots of a video depicting an early pubescent female. An example of these images depicts a naked early pubescent female sitting on a countertop with her legs spread apart and bent at the knees, exposing her vagina and anus. The image depicts the lascivious exhibition of the genitals and pubic area of the minor victim.

On September 6, 2012, the user "buketgrl" registered an account on "Website 18." The user included in his registration an AES e-mail account. The username for this AES account was "buketgrl1@[AES].net." The profile image associated with the user account, also known as the user's avatar, was an image depicting a naked pre-

17

pubescent female doing a handstand with her legs spread apart, exposing her vagina.

Between September 6, 2012, and August 5, 2013, "Website 18" user "buketgrl" made a

total of 54 postings on "Website 18." Examples of these posts are as follows:

- On November 8, 2012, the user "buketgrl" made a post stating, "Here is a cutie!!!!!" Included with the post was a hyperlink to an external website that appeared to contain a file that was no longer accessible, along with a password.

- On December 6, 2012, the user "buketgrl" made a post stating "Looking for this set, or name of the set so I can get it myself. Thanks for the help friends!!!" Included with the post were two hyperlinks to external websites on the Tor network that appeared to contain an image each that was no longer accessible.

On September 5, 2013, a federal search warrant issued by the District of

Maryland was executed on the account "buketgrl1@[AES].org." The results were then

obtained on September 6, 2013, and September 12, 2013. A review of these results

revealed approximately 93 e-mails in the account, dated from June 7, 2012, through

August 1, 2013. On June 20, 2012, the user of "buketgrl1" received an e-mail from

service@paypal.com. The name associated with the "buketgrl1" account was "Joel

Thomas". Among other things, this e-mail contained a receipt for a $15.00 payment to

the website http://www.ishareupload.com on June 20, 2012.

On the same day of June 20, 2012, the user of "buketgrl1" received an email

from "Help@ishareupload.com" stating that a payment of $15.00 was received and

processed successfully. The email also indicated that an account for

"buketgrl1@[AES].org" was established at ishareupload.com with the Login name of

"buketgrl" and the password "fa1rdriv."

**E.      IDENTIFICATION OF JOEL THOMAS as "BUKETGRL"**

A review of subpoena results from PayPal in regards to the e-mail account

"buketgrl1@[AES].org" identified the Defendant at an address in Aurora, Colorado as

the PayPal account holder. The IP address utilized to access the account in June 2012

geolocated to Aurora, Colorado and was assigned to the Internet Service Provider,

Comcast Communications. At that time, the Defendant subscribed to Comcast at the

same address in Aurora, Colorado that was associated with the PayPal records. The

Defendant was also connected to that address through publicly available databases,

Arapahoe County Property Records, and Colorado Department of Motor Vehicles.

In November 2013, the Defendant was living at a different Aurora, Colorado

address which was connected to him through publicly available databases and physical

surveillance. On November 25, 2013, a federal search warrant was executed by the

F.B.I. at the defendant's new home address in Aurora, Colorado and several digital

devices belonging to the Defendant were seized.

**F.      COMPUTER FORENSIC ANALYSIS**

As part of the search in November 2013 at the Defendant's residence, an Apple

Macbook laptop computer was seized and a forensic examination was conducted. That

computer had a password of "fa1rdriv", the same password used by

"buketgrl1@[AES].org" with the login name "buketgrl" for the website ishareupload.com.

Forensic evidence revealed that Joel Thomas was the user of the Macbook in several

ways, including the following:

- The "admin account" associated with the Macbook was in the name "Joel
  Thomas"

- The system configuration file specified the domain name as "Jthomas Macbook"

- The historical system log file showed previously assigned names, such as "Joels-

19

Macbook" and "joel-thomas-macbook"

- There was a Macbook "Stickies" database file[5] under the admin user of the Macbook that contained several notes pertaining to the Defendant, including a gmail address with his name, frequent flyer and other membership numbers, as well as accounts associated with the Defendant.

Two significant sized encrypted containers were located on the Macbook, one 30 gigabytes and one 10 gigabytes, both of which had been accessed by the computer user multiple times.  Due to the level of encryption, those containers could not be accessed by the forensic examiner.  Additionally, CCleaner, a commercial product permitting the secure deletion of files and removal of remnant data was installed and all cleaning features were enabled.  However, other forensic evidence revealed that the Defendant utilized the Macbook to access "Website 15" and "Website 18" with the intent to view child pornography, including the following:

- QuickLook Cache is part of the Mac user interface that is used to create thumbnail images and previews of file content for the Mac program called Finder. QuickLook stores metadata information about the files encountered and data is recorded when a file is previewed.  Files similar in name and size which were uploaded by "buketgrl" to "Website 15" were found in the QuickLook cache entries on the Macbook.  Specifically, 47 of the 78 files that were uploaded to "Website 15" by "buketgrl" were identical in file name and size entries in QuickLook cache on the Macbook.  Seventeen of the matched files were uploaded by "buketgrl" within one hour of the corresponding file being modified on the Macbook.

- There was a Stickie note file which contained text that was identical to a post by "buketgrl" on "Website 18", created hours before the post appeared on Website 18 on April 4, 2013.  The note and the post contained links to a website which hosts files, which was a website frequently used by "buketgrl" to share files on "Website 15".  There were 20 similar hyperlink posts by "buketgrl" on "Website 15" from September 6, 2012 through June 19, 2013.

---

[5] The Macbook Stickies application allows users to record notes and other data on the digital equivalent of Post-it notes.

- There was a Stickie note with the true name and address of "Website 15" and "Website 18", including a line which stated "name – Buketgrl" for both and then "pass" with a different password for each. The password listed for "buketgrl" on "Website 15" was a version of the password used to access the Macbook and ishareupload.com.

- On June 14, 2012, "buketgrl" sent a private message to another user through "Website 15", which asked the other user to share the entire series of a particular set that the other user posted earlier in the day. "Buketgrl" also asks the other user about a particular peer-to-peer file sharing program and asks if there is "anything I should know about it as for trust and security." Twenty-eight minutes earlier that particular peer-to-peer file sharing program was installed on the Macbook.

    Further, forensic evidence revealed that the Defendant used the Macbook to view and access child pornography and child erotica in several ways, including the following:

- QuickLook entries showed that the Macbook was used to view a variety of images and videos with file names indicative of child pornography, including 606 entries with files or folder names including the term "PTHC," which stands for "preteen hard core" and as noted above is a common name associated with child pornography depicting sexual acts involving prepubescent minors. An additional 233 QuickLook entries showed files were accessed that included the name "pedo." The metadata associated with several of these files revealed that they were currently or had been stored on the encrypted container contained on the Macbook, which could not be accessed by the forensic examiner due to the level of encryption.

- There was a Stickie note which contained the true name and web address of other websites on the the Tor network known to be devoted to the advertisement and distribution of child pornography.

- An image viewer program, which stores a text listing of files viewed by the slideshow feature of the Macbook showed file names indicative of child pornography were viewed on the Macbook.

- Child erotica thumbnails were recovered from a Windows 7 Virtual Machine installed on the Macbook.

Copies of files depicting child pornography associated with the Defendant's postings to Website 15 were provided to the National Center for Missing and Exploited Children (NCMEC). NCMEC reports that several of the image files associated with the Defendant depict minor victims previously identified by law enforcement. Most of the images depicting identified minor victims were produced outside the state of Colorado. The government is not aware of any evidence that the Defendant produced child pornography appearing on Website 15 or Website 18.

Defendant admits that the images and videos he accessed with intent to view on Websites 15 and 18, were child pornography as defined in 18 U.S.C. § 2256(8)(A); that he knew they were child pornography when he accessed and viewed them; that the material involved minors who had not attained the age of 12 years; that the defendant distributed child pornography in exchange for valuable consideration, namely access to other child pornography; that he used a computer to commit the offense; that the offense involved at least 10 images but fewer than 150 images; and that the child pornography had been mailed or had been shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means, including by computer, when the defendant accessed and viewed the child pornography in Colorado.

## VI. ADVISORY GUIDELINE CALCULATION

The parties understand that the imposition of a sentence in this matter is governed by 18 U.S.C. § 3553. In determining the particular sentence to be imposed, the Court is required to consider seven factors. One of those factors is the sentencing

range computed by the Court under advisory guidelines issued by the United States

Sentencing Commission. In order to aid the Court in this regard, the parties set forth

below their estimate of the advisory guideline range called for by the United States

Sentencing Guidelines. To the extent that the parties disagree about the guideline

computations, the recitation below identifies the matters which are in dispute.

The Guideline calculation below is the good-faith estimate of the parties, but it is

only an estimate. Although the government is obligated to make a sentencing

recommendation tied to the offense level of 26, as set forth in the Plea Agreement

section above, the parties understand that the government has an independent

obligation to assist the Court in making an accurate determination of the correct

guideline range. To that end, the government may make legal or factual arguments that

affect the estimate below.

**Offense Level**:  Under § 2G2.2, the base offense level for this offense is **18**.

§ 2G2.2(a)(1).

A. Because the pornographic material involved a prepubescent minor or minors who
had not attained the age of 12, there is an increase of **+2** levels.  § 2G2.2(b)(2).

B. Because the defendant distributed in exchange for any valuable consideration,
but not for pecuniary gain, there is an increase of **+5** levels.  § 2G2.2(b)(3)(B).

C. Because the offense involved the use of a computer or an interactive computer
service for the possession, transmission, receipt, or distribution of the material,
there is an increase of **+2** levels.  § 2G2.2(b)(6).

D. Because the offense involved at least 10 images but fewer than 150, there is an
increase by **+2** levels.  § 2G2.2(b)(7)(A).

E. No victim-related, role-in-offense, obstruction and/or multiple count adjustments
apply.

23

F. Defendant should receive a decrease in the offense level by -2 based upon his acceptance of responsibility. § 3E1.1(a). Defendant should also receive a decrease in the offense level by –1 for timely notifying the government. § 3E1.1(b). At sentencing, the government will make the appropriate motion for the one-point reduction.

G. The adjusted offense level is 26.

## Criminal History Category

H. The parties acknowledge and agree that the estimation regarding Defendant's criminal history is tentative. Defendant acknowledges that the criminal history will be further investigated by the United States Probation Department and ultimately determined by the Court. Defendant further acknowledges that any additional facts regarding the criminal history can greatly affect the final guideline range and result in a longer term of imprisonment. Based upon the facts known at this time regarding Defendant's criminal history, the parties believe that Defendant falls within Criminal History Category ("CHC") I. § 4A1.1.

I. The career offender and repeat and dangerous sex offender adjustments tentatively do not apply. § 4B1.1; § 4B1.5.

## Guideline Ranges

J. The guideline range resulting from the estimated offense level of 26 and the estimated criminal history category of I is 63 to 78 months imprisonment. However, the imprisonment range could be from 63 months (bottom of CHC I) to 150 months (top of CHC VI). The guideline range would not exceed, in any case, the statutory maximum of 120 months applicable to the count of conviction.

K. Pursuant to § 5E1.2, assuming the estimated offense level of 26, the fine range for this offense would be $25,000 to $250,000, plus applicable interest and penalties.

L. Pursuant to 18 U.S.C. § 3583(k) and § 5D1.2(b)(2), if the Court imposes the term of supervised release, that term shall be at least 5 years but not more than life.

## VII. ENTIRE AGREEMENT

This document states the parties' entire agreement. There are no other promises, agreements, (or "side agreements"), terms, conditions, understandings or assurances, express or implied. In entering this agreement, neither the government nor the defendant have relied, or are relying, on any terms, promises, conditions or assurances not expressly stated in this agreement.

Date: 10/2/19

Joel Thomas
Defendant

Date: 10/2/19

Douglas I. Richards
Attorney for Defendant

Date: 10/2/19

Alecia L. Riewerts
Assistant U.S. Attorney
District of Colorado

Date: 10/2/19

Lauren S. Kupersmith
Trial Attorney
Child Exploitation and Obscenity Section
U.S. Department of Justice

25

**Document #3**

**Judgment in a criminal case**
**1:19-cr-00397-CMA-1**

AO 245B (Rev. 02/18)    Judgment in a Criminal Case

# UNITED STATES DISTRICT COURT

### District of Colorado

| | |
|---|---|
| UNITED STATES OF AMERICA | **JUDGMENT IN A CRIMINAL CASE** |
| v. | |
| JOEL THOMAS | Case Number:  1:19-cr-00397-CMA-1 |
| | USM Number:  45461-013 |
| | *Douglas Ivan Richards* |
| | Defendant's Attorney |

## THE DEFENDANT:

☒ pleaded guilty to count(s)   1 of the Information

☐ pleaded nolo contendere to count(s)
which was accepted by the court.

☐ was found guilty on count(s)
after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| **Title & Section** | **Nature of Offense** | **Offense Ended** | **Count** |
|---|---|---|---|
| 18 U.S.C. § 2252A(a)(5)(B) and (b)(2) | Access with Intent to View Child Pornography | 08/02/13 | 1 |

The defendant is sentenced as provided in pages 2 through _____7_____ of this judgment.  The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s) _____

☐ Count(s) _____    ☐ is   ☐ are dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid.  If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

January 13, 2020
Date of Imposition of Judgment

*Christine M Arguello*
Signature of Judge

Christine M. Arguello, United States District Judge
Name and Title of Judge

January 16, 2020
Date

Case 1:19-cr-00397-CMA    Document 33    Filed 01/16/20    USDC Colorado    Page 2 of 8

AO 245B (Rev. 02/18) Judgment in Criminal Case

| | Judgment — Page | 2 | of | 7 |
|---|---|---|---|---|

DEFENDANT:     JOEL THOMAS
CASE NUMBER:     1:19-cr-00397-CMA-1

# IMPRISONMENT

The defendant is hereby committed to the custody of the Federal Bureau of Prisons to be imprisoned for a total term of: **forty-eight (48) months.**

☒ The court makes the following recommendations to the Bureau of Prisons:
The Court recommends the defendant be designated to a facility that has sex offender management programs available.
The Court recommends the defendant be designated to FCI Englewood.

☐ The defendant is remanded to the custody of the United States Marshal.

☐ The defendant shall surrender to the United States Marshal for this district:

    ☐ at _____ ☐ a.m. ☐ p.m. on _____.

    ☐ as notified by the United States Marshal.

☒ The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

    ☒ Before 12 p.m. on _____within 15 days of designation_____.

    ☐ as notified by the United States Marshal.

    ☒ as notified by the Probation or Pretrial Services Office.

# RETURN

I have executed this judgment as follows:


Defendant delivered on _____ to _____

at _____ , with a certified copy of this judgment.


_____
_UNITED STATES MARSHAL_

By _____
DEPUTY UNITED STATES MARSHAL

AO 245B (Rev. 02/18) Judgment in Criminal Case

| | Judgment — Page | 3 | of | 7 |

DEFENDANT:        JOEL THOMAS
CASE NUMBER:     1:19-cr-00397-CMA-1

## SUPERVISED RELEASE

Upon release from imprisonment, you will be on supervised release for a term of: **five (5) years.**

## MANDATORY CONDITIONS

1. You must not commit another federal, state or local crime.
2. You must not unlawfully possess a controlled substance.
3. You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.
    ☒ The above drug testing condition is suspended, based on the court's determination that you pose a low risk of future substance abuse. *(check if applicable)*
4. ☒ You must make restitution in accordance with 18 U.S.C. §§ 3663 and 3663A or any other statute authorizing a sentence of restitution. *(check if applicable)*
5. ☒ You must cooperate in the collection of DNA as directed by the probation officer. *(check if applicable)*
6. ☒ You must comply with the requirements of the Sex Offender Registration and Notification Act (34 U.S.C. § 20901, *et seq.*) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in the location where you reside, work, are a student, or were convicted of a qualifying offense. *(check if applicable)*
7. ☐ You must participate in an approved program for domestic violence. *(check if applicable)*

You must comply with the standard conditions that have been adopted by this court as well as with any other conditions on the attached page.

AO 245B (Rev. 02/18) Judgment in Criminal Case

| | Judgment — Page | 4 | of | 7 |

DEFENDANT:      JOEL THOMAS
CASE NUMBER:    1:19-cr-00397-CMA-1

# STANDARD CONDITIONS OF SUPERVISION

As part of your supervised release, you must comply with the following standard conditions of supervision. These conditions are imposed because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by probation officers to keep informed, report to the court about, and bring about improvements in your conduct and condition.

1. You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.
2. After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.
3. You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.
4. You must answer truthfully the questions asked by your probation officer.
5. You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
6. You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.
7. You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so. If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
8. You must not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.
9. If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.
10. You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).
11. You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.
12. If the probation officer determines that you pose a risk to another person (including an organization), the probation officer may, after obtaining Court approval, notify the person about the risk or require you to notify the person about the risk and you must comply with that instruction. The probation officer may contact the person and confirm that you have notified the person about the risk.
13. You must follow the instructions of the probation officer related to the conditions of supervision.

## U.S. Probation Office Use Only

A U.S. probation officer has instructed me on the conditions specified by the court and has provided me with a written copy of this judgment containing these conditions. For further information regarding these conditions, see *Overview of Probation and Supervised Release Conditions*, available at: www.uscourts.gov.

Defendant's Signature _____      Date _____

Case No. 1:19-cr-00397-CNS    Document 42-1    filed 09/04/20    USDC Colorado    pg
40 of 43
Case 1:19-cr-00397-CMA    Document 33    Filed 01/16/20    USDC Colorado    Page 5 of 8

AO 245B (Rev. 02/18) Judgment in Criminal Case

| | | |
|---|---|---|
| DEFENDANT: | JOEL THOMAS | Judgment — Page 5 of 7 |
| CASE NUMBER: | 1:19-cr-00397-CMA-1 | |

# SPECIAL CONDITIONS OF SUPERVISION

1. You must participate in and successfully complete a sex-offense specific evaluation and/or treatment program as approved by the probation officer. The probation officer will supervise your participation in and compliance with the treatment program. You must comply with all rules and regulations of the treatment program that are specified by the treatment agency and the probation officer. You must pay all or part of the costs of treatment as determined by the probation officer based upon your ability to pay.

2. You must submit to periodic polygraph testing at the discretion of the probation officer as a means to ensure you are in compliance with the requirement of your supervision or treatment program.

3. You must participate in visual response testing as part of the required participation in sex-offense specific evaluation and/or treatment.

4. Your use of computers and Internet capable devices will be limited to those you request to use and which the probation officer authorizes. The probation officer must not prohibit lawful Internet use except to impose restrictions on the types of computers or Internet capable devices that you may use, to provide necessary restrictions to facilitate correctional treatment and rehabilitation, and to protect the public from any further crimes. Any computer or Internet capable device must be able to be effectively monitored by and comply with the requirements of monitoring software utilized by the Probation Office. You must disclose any username or identification(s) and password(s) for all computers or Internet capable devices to the probation officer.

5. You must submit your person, and any property, house, residence, vehicle, papers, computer, Internet capable device, other electronic communications or data storage devices or media, and effects to search at any time, with or without a warrant, by any law enforcement or probation officer with reasonable suspicion concerning a violation of a condition of supervised release or unlawful conduct and by any probation officer in the lawful discharge of the officer's supervision functions. *The search is to be conducted at a reasonable time and in a reasonable manner.*

6. You must allow the probation officer to install software/hardware designed to monitor computer activities on any computer you are authorized by the probation officer to use. The software may record any and all activity on the computer, including the capture of keystrokes, application information, Internet use history, email correspondence, and chat conversations. A notice will be placed on the computer at the time of installation to warn others of the existence of the monitoring software on the computer. You must not attempt to remove, tamper with, reverse engineer, or in any way circumvent the software/hardware.

7. You must not incur new credit charges or open additional lines of credit without the approval of the probation officer, unless you are in compliance with the periodic payment obligations imposed pursuant to the Court's judgment and sentence.

8. You must provide the probation officer access to any requested financial information and authorize the release of any financial information until all financial obligations imposed by the court are paid in full.

9. As directed by the probation officer, you must apply any monies received from income tax refunds, lottery winnings, inheritances, judgments, and any anticipated or unexpected financial gains to the outstanding court-ordered financial obligation in this case.

10. You must pay the financial penalty/restitution in accordance with the Schedule of Payments sheet of this judgment. You must also notify the court of any changes in economic circumstances that might affect your ability to pay the financial penalty/restitution.

11. If you have an outstanding financial obligation, the probation office may share any financial or employment documentation relevant to you with the Asset Recovery Division of the United States Attorney's Office to assist in the collection of the obligation.

AO 245B (Rev. 02/18) Judgment in Criminal Case

| | Judgment — Page | 6 | of | 7 |
|---|---|---|---|---|

DEFENDANT:     JOEL THOMAS
CASE NUMBER:     1:19-cr-00397-CMA-1

# CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on the following page.

| | Assessment | JVTA Assessment* | Fine | Restitution |
|---|---|---|---|---|
| **TOTALS** | $ 100.00 | $ 0.00 | $ 0.00 | $ 5,000.00 |

☐   The determination of restitution is deferred until _____ . An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☒   The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

    If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Loss** | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| Deborah A. Bianco, in trust for Henley c/o The Law Office of Deborah A. Bianco 14535 Bellevue-Redmond Road, Suite 201, Bellevue, WA 98007 | $5,000.00 | $5,000.00 | |
| **TOTALS** | **$5,000.00** | **$5,000.00** | |

☐   Restitution amount ordered pursuant to plea agreement   $ _____

☐   The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on the following page may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☒   The court determined that the defendant does not have the ability to pay interest and it is ordered that:

    ☒  the interest requirement is waived for the   ☐ fine   ☒ restitution.

    ☐  the interest requirement for the   ☐ fine   ☐ restitution is modified as follows:

\* Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22.
\*\* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

Case No. 1:19-cr-00397-CNS    Document 42-1    filed 09/04/20    USDC Colorado    pg
42 of 43
Case 1:19-cr-00397-CMA    Document 33    Filed 01/16/20    USDC Colorado    Page 7 of 8

AO 245B (Rev. 02/18) Judgment in Criminal Case

| | Judgment — Page 7 of 7 |
|---|---|

DEFENDANT:        JOEL THOMAS
CASE NUMBER:    1:19-cr-00397-CMA-1

## SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

A  ☐  Lump sum payment of  $ _____ due immediately, balance due

       ☐  not later than _____ , or
       ☐  in accordance with  ☐ C,  ☐ D,  ☐ E, or  ☐ F below; or

B  ☒  Payment to begin immediately (may be combined with  ☐ C,  ☐ D, or  ☒ F below); or

C  ☐  Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of
    _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after the date of this judgment; or

D  ☐  Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of
    _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after release from imprisonment to a
    term of supervision; or

E  ☐  Payment during the term of supervised release will commence within _____ (e.g., 30 or 60 days) after release from
    imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

F  ☒  Special instructions regarding the payment of criminal monetary penalties:

       The special assessments and restitution are due immediately. Any unpaid monetary obligations upon release from
       incarceration shall be paid in monthly installment payments during the term of supervised release. The monthly
       installment payment will be calculated as at least 10 percent of the defendant's gross monthly income.

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during the period of imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐  Joint and Several

    Defendant and Co-Defendant Names and Case Numbers (including defendant number), Total Amount, Joint and Several Amount,
    and corresponding payee, if appropriate.

☐  The defendant shall pay the cost of prosecution.

☐  The defendant shall pay the following court cost(s):

☒  The defendant shall forfeit the defendant's interest in the following property to the United States:
    One Apple MacBook A1181 laptop, Serial number W88338KC0P1.

7

AO 245B (Rev. 02/18) Judgment in Criminal Case

| | |
|---|---|
| DEFENDANT: | JOEL THOMAS |
| CASE NUMBER: | 1:19-cr-00397-CMA-1 |

Judgment — Page ___8___ of ___7___

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) JVTA assessment, (8) penalties, and (9) costs, including cost of prosecution and court costs.