```
                    IN THE UNITED STATES DISTRICT COURT
                        FOR THE DISTRICT OF COLORADO
```

**FILED**
UNITED STATES DISTRICT COURT
DENVER, COLORADO

**MAR 14 2022**

UNITED STATES OF AMERICA,           (
                                    (
v.                                  (
                                    (   Case No. 19-cr-00397
JOEL THOMAS,                        (
                                    (
Defendant                           (

JEFFREY P. COLWELL
CLERK

---

## MOTION TO MODIFY SUPERVISED RELEASE CONDITIONS

---

Comes now, Joel Thomas, Defendant, acting Pro Se, is seeking to move this Court in actions to Modify Conditions of Supervised Release; pursuant to 18 U.S.C. §3563(c) and Federal Rules of Criminal Procedure 32.1(c).

The Defendant is 8-12 months from release from the Bureau of Prisons and will be placed on Home Confinement and subject to the supervisory role of the United States Probation Office (U.S.P.O.). This motion is ripe for review as portions of the Special Conditions applied to his Supervised Release are not applicable and need modification or clarification so he can comply with the Court's order without violation. Citing: United States v. Lilly, 206 F.3d 756, 762 (7th Cir. 2000)(district court had authority to entertain defendant's motion for clarification in which he sought declaration that his restitution obligation was satisfied); United States v. Balderama, 2015 U.S. Dist. LEXIS 37145, at *40 (D.N.M. Mar. 9, 2015)(Fed. R. Crim. P. 32.1 permits defendant to move for clarification of term or condition of supervised release so he or she can comply with the court's order without needing to violate it first); United States v. Vigil, 727 F. Supp. 2d 1139, 1145 (D.N.M. 2010)(court had jurisdiction to consider releasee's request to clarify whether he was required to pay interest on fine imposed by court as part of sentence).

This motion to modify may be used for the simple purpose of permitting a person subject to supervised release to obtain resolution of any ambiguity as

-1-

as to the meaning of a condition. A district court also has authority to clarify a term or condition of supervised release so that the defendant can comply with the court's order without first having to violate it. Indeed, the court may order modification regardless of whether the defendant has violated the term of supervision or is fully in compliance; however, the modification should not involve a greater deprivation of defendant's liberty than is reasonably necessary.

### A) LEGAL STANDARD

In general, every person sentenced to a term of imprisonment is also given a term of supervised release. This is controlled by Title 18 U.S.C.s. §3583(a).

1) – **18 U.S.C. §3583(e)(2)**
   A court may modify, reduce, or enlarge the conditions of supervised release at any time prior to the expiration or termination of the term of supervised release after considering certain sentencing factors outlined in 18 U.S.C.S. §3553(a).
2) – **FEDERAL RULES OF CRIMINAL PROCEDURE RULE 32.1(c)(Modification)**
   (1) Before modifying the conditions of probation or supervised release, the court must hold a hearing, at which the person has the right to counsel and an opportunity to make a statement and present any information in mitigation.
   (2) Exceptions: A hearing is not required if:
      (A) – the person waives the hearing; or
      (B) – the relief sought is favorable to the person and does not extend the term of probation or supervised release;
      (C) – an attorney for the government has received notice of the relief sought, and had reasonable opportunity to object to, and has not done so.

### B) IMPOSITION AND FACTORS RELATING TO SPECIAL CONDITIONS OF SUPERVISED RELEASE

While the district court has broad discretion in fashioning special conditions of supervised release, Congress has limited this discretion in 18 U.S.C.S. §3583(d). Such conditions must be reasonably related to one of the following sentencing factors:

1) the nature and circumstances of the offense and the defendant's history and characteristics;
2) the deterrence of criminal conduct;
3) the protection of the public from further crimes by the defendant; and
4) the defendant's educational, medical, or other correctional needs.
(see 18 U.S.C.S. §§3583(d)(1), 3553(a)(1), (a)(2)(B)(D))

The conditions also must involve no greater deprivation of liberty than is necessary to deter criminal activity, protect the public, and promote the defendant's rehabilitation. 18 U.S.C.S. §§3583(d)(2), 3553(a)(2)(B)-(D). The condition must be consistent with any pertinent policy statements issued by the Sentencing Commission. §3583(d)(3).

   1) **UNITED STATES SENTENCING GUIDELINES MANUAL §5D1.3(d)(5)**

      (a) - Mental Health Program Participation
         (I) - Determination for the need of 18 U.S.C.S. §4241(a):
               "At any time after the commencement of a prosecution for
               an offense and prior to the sentencing of the defendant
               (emphasis added), or at any time after the commencement
               of probation or supervised release and prior to the
               completion of the sentence, the defendant or the attorney
               for the Government may file a motion for a hearing to
               determine the mental competency of the defendant."

   2) **18 U.S.C.S. §4247(a)(1)(C): Rehabilitation Program**

      (a) Definitions. As used in this chapter [18 U.S.C.S. §2241 et seq.]-
      (1) "rehabilitation program" includes-
      (C) drug, alcohol, and sex offender treatment programs, and other treatment
          programs that will assist the individual in overcoming a psychological
          or physical dependence or any other condition that makes the individual
          dangerous to others.

**C) APPLICATION AND IMPOSITION OF SPECIAL CONDITIONS TO SUPERVISED RELEASE**

Mandatory conditions - those required by statute DO NOT REQUIRE an individualized assessment. When, however, neither the Sentencing Commission nor Congress has required or recommended a condition, the sentencing court MUST PROVIDE a reasoned basis for applying the condition to the specific defendant before the district court can impose upon a defendant a special condition of supervised release, the district court must analyze and generally explain how, with regard to the specific defendant being sentenced, the special condition furthers the three statutory requirements set out in 18 U.S.C.S. §3583(d). Thus, to justify the Mental Health Condition, the district court needed only to provide a generalized reason within the Sentencing Guidelines Manual §5D1.3(d)(%). The class of offense does not

-3-

constitute adequate reasons for participation in Mental Health Treatment. In addition, the Sentencing Guidelines Manual recommends that a condition requiring that the defendant participate in a mental health program approved by the United States Probation Office should be imposed if the court has reason to believe that the defendant is in need of psychological or psychiatric treatment. U.S. Sentencing Guidelines Manual §5D1.3(d)(5). In order the the court to determine if the defendant is in need of mental health treatment, the only way to determine his disease or condition is through the Determination Statute of §4241 in regards to §4247 "rehabilitation program" as outlined previously. Since a judge is not a doctor or psychiatrist, that determination cannot be made unless a exam is performed and a report is filed by a court ordered psychologist, in which a hearing is required for this determination.

The only mandatory requirement set out in 18 U.S.C.S. §3583(d) for a sex offense crime is the mandatory requirement of registering under the Sex Offender Registration and Notification Act [34 U.S.C.S. §20901 et seq.]. There is no mandatory requirement for mental health treatment. Since there is no mandatory mental health treatment, the court is required to have a hearing to determine if the defendant is in need of psychological or psychiatric treatment under §5D1.3(d)(5).

In addition to §5D1.3(d)(5), the court must take into consideration specific offender characteristics as outlined in §5H1 under 28 U.S.C.S §994(d) - Part H. In the second category under §5H1 are specific offender characteristics that Congress directed the Commission to take into account within the guidelines only to the extent that they have relevance to sentencing. See 28 U.S.C.S. §994(d). The policy statements indicate that these characteristics may be relevant in determing whether a sentence outside the applicable guideline range is warranted (e.g., age; mental and emotional conditions; physical condition). As with other provisions in this

manual, these policy statements are "evolutionary in nature". See Chapter One, Part A, Subpart 2 (continuing evolution and roles of the guidelines); 28 U.S.C.S. §994(o). The commission expect, and the Sentencing Reform Act contemplates, that continuing research and analysis will result in modifications and revisions.

"Mental an demotional conditions may be relevant in determining whether a departure is warranted, if such conditions, individually or in combination with other offender characteristics, are present to an UNUSUAL DEGREE and distinguish the case from the typical cases covered by the guidelines." §5H1.3. §5C1.1 also covers the application of determining mental and emotional conditions in regards to relevancy when imposing special conditions of supervised release and applying participation in a mental health program. §5B1.3(d)(5) and §5D1.3(d)(5). The common theme here is the determination and relevance when applying a psychological or psychiatric evaluation or treatment during the term of supervised release. In order for that application to apply, a determination (i.e., hearing) must be performed prior to sentencing of a defendant to a condition of any type of mental health treatment program.

**D) SPECIAL CONDITION NUMBER ONE (1) AS APPLIED TO THE DEFENDANT UNDER §3583(d)**

In United States v. Mike, 632 F. 3d 686, 693 (10th Cir. 2011), the court stated that conditions requiring sex offender treatment must be "supported by particularized findings that it does not constitute a greater deprivation of liberty than reasonably necessary to accomplish the goals of sentencing." 632 F.3d at 696. In addition, in United States v. Bear, 769 F.3d 1221, 1228 (10th Cir. 2014), the court stated that "conditions requiring a mental health evaluation and treatment affect a liberty interest and must be supported by 'particularized findings' by the district court." 769 F.3d at 1230.

In response to a liberty interest argument, the Government brought up in

United States v. Jereb, 882 F.3d 1325 (10th Cir. 2018) that the court must find "generalized reasons" that need to be applied to find a condition of mental health treatment applicable. Again, class of offense does not warrant "generalized reasons" as sufficient to apply mental health treatment.

In regards to the Defendant, the Sentencing Court failed to provide or obtain a statement as to what the mental health condition the Defendant suffers from, or has been diagnosed with. Since there was no such hearing or evaluation ordered by the Court, there was NO determining factor prior to sentencing, and there was no basis to impose a condition of mental health treatment to the Defendant. The 10th Circuit has found that psychosexual treatment is a form of mental health treatment and is under the same standard as applied to the mental health condition. See United States v. Englehard, 2022 U.S. App. LEXIS 1139 no. 21-8007 (10th Cir. App., 2022) To justify the mental health condition on the Defendant, the Court used the Defendant's history to apply the special conditions; however, the Defendant does not have a criminal history to apply, so that justification was made in error. At the time of sentencing, the Court used a presumed history of the Defendant that was brought up by the government in the filing of information. In the next section, the Defendant's factual history will be discussed.

E) **FACTUAL HISTORY OF THE DEFENDANT**

Under §5H1.8 (criminal history - policy statement), the Sentencing Guidelines Manual states "A defendant's criminal history is relevant in determining the applicable criminal history category." See Chapter Four (Criminal History and Criminal Livelihood). The Court did take into account the lack of factual criminal history of the Defendant; however, it applied the §3553(a) mental health treatment under a presumed history of past criminal conduct as exampled in the Defendant's previous Motion For Compassionate Release (2020 U.S. Dist. LEXIS 181929)(Oct. 1, 2020), when the Court took a statement

-6-

made on a web forum as fact. The Court used "Defendant has been collecting child pornography since the 1990s" (Doc. #16 at 16) as factual, which the Government provided the Court at the time of sentencing. The Government's use of the Defendant's post on a web forum was taken out of context and was a statement of puffery. "Puffery" is defined as a "term of art 'used to characterized those vague generalities that no reasonable person would rely on as assertions of particular fact.'" Alpine Bank v. Hubbell, 555 F.3d, 1106 (10th Cir. 2009. Puffery is distinguished from a statement of fact by its "broad, vague and commendatory language". Time Warner Cable, Inc. v. DIRCTV, Inc., 497 F.3d 144, 159 (2nd Cir. 2007). Thus, making the Defendant's statement false and not possibly true due to the age of the Defendant in the 1990s.

1) 1990s

The Defendant was born in 1980, making the Defendant a child, adolescent, and a teenager in the 90's. The Defendant did not have access to the internet until 1997, which was at his parents' home; he would be just 16-17 at that time. His access was limited to AOL (America On-Line) and he had very limited and restrictive access of that service in place by his parents. In 1999, the Defendant graduated high school and immediately joined the Army Reserves. Through the summer and winter of 1999, the Defendant was in basic training, making collecting digital images impossible for the Defendant, further proving the Defendant's statement false and a form of puffery on the forum.

2) 2000s

In 2000, the Defendant enrolled at University of Northern Colorado, and at that time, did not own a computer. His limited internet access was at the computer lab located at the University Center. He occasionally used his girlfriend's (no wife) computer at her house which did not have internet access.

-7-

In 2001, the Defendant's Army Reserve Unit was activated due to the 9/11 attacks, and he was deployed to Fort Carson, Colorado from 2001-2006. During those five years, the Defendant was housed in various base housing, ranging from a condemned hospital building, to dorm-style barracks. During that deployment, the Defendant did not have cable, phone or internet service. The Defendant was honorably discharged from service in 2006, in which he moved back home to Aurora, CO with his wife.

In 2011, the Aurora Police made a "knock and talk" with the Defendant at his home. This "knock and talk" turned out to be nothing, as there is no record, report, or investigation performed by the Aurora Police.

In 2012, the Defendant read a news story about the "Dark Web". A simple Google search informed the Defendant on how to access the "Onion Network" by downloading Firefox browser. This download directed him to the "TOR Browser" and to the web page of Wikipedia on the "Onion Network". It was not complicated at all, contrary to how the Government portrays it to be. This led to the Defendant's first exposure to child sexual abuse images. Soon after, the Government began their investigation.

3) 2013-2019

After the Government's search on his home, the Defendant knew right away his cause of action and his impact to not only his family, but his victims, taking into account his respect for the law and the seriousness of his crime.

From 2013 until 2019, the Government felt no inclination to pursue, investigate further, or require the Defendant's monitoring or custody for fear of public safety or further criminal activity. For six and a half years, the Government had no concern of the Defendant's mental health nor suggested restrictions on the Defendant. The Government allowed the Defendant to travel to Mexico, Canada, Germany, Czech Republic, United Kingdom, Switzerland, and Austria. In addition to his unrestricted travel, the Defendant had several very intensive background checks performed by

-8-

various agencies including the Secret Service nearly every year due to his media access to high-profile events to include: The State of the Union Address by the President of the United States, The Republican National Convention, Political Town Hall meetings in various states, Little League World Series Playoffs and main event, multiple Superbowls, NBA Finals, and serving as a Den Leader of his Cub Scout Pack.

During these background checks there were no concerns or red flags by the Government. In fact, the Government knew about the Defendant's job and what it entailed. (Traveling every week to a different city in the U.S.) The Defendant's attorney was in constant contact with the Government over the course of those six years, and approved all clearances including proximity to the President of the United States.

This demonstrates to the Court that the Defendant, for the past nine years has acknowledge the seriousness of his crime, has significant remorse regarding his victims, has refrained from criminal actions and has the utmost respect for the law.

4) 2019 - PRESENT

In June 2019, the Defendant was working an event in Toronto, Canada when the Government was ready to file charges from their 2013 investigation. At that time, the Defendant's attorney recommended that the Defendant start seeing a psychiatrist due to the added stress, and to help identify the course of action that led him down the path he took six years prior. After meeting with his psychiatrist for several moths, Dr. Max Wachtel provided a statement to the Court at the time of sentencing disclosing his findings and how the Defendant possessed exceptional remores for his victims, took full responsibility for his actions and has a complete understanding and seriousness of his crime, as well as the

effects not only on his victims, but to his family and society.

In addition to weekly meetings with Dr. Wachtel, the Defendant also attended a sex addiction program at Begin Again Institute (specializes in Sex Addiction Therapy), in which he successfully completed. (Certificate provided to the Sentencing Court at the time of Sentencing). On top of the therapy, the Defendant also started attending a 12-Step program for sexual addiction. The Defendant has been, is continuing, and will be attending once released, the SAA program. This program, as applied to the Defendant, is the most effective form of treatment he has experienced.

5) EXPLANATION OF SAA (SEX ADDICTS ANONYMOUS)

SAA is a volunteered fellowship of persons who share their experiences, strength, and hope with each other so that they may solve their common problem and help others to recover from similar addictions.

SAA is a 12-Step program modified to address the specific treatment needs of sexual addiction.

The discussions, stories, and topics focus on recovery and/or support for recovery. "The stories disclosed in a general way of what we used to be like, what happened, and what we are like now." SAA Green Book, (How It Works).

The principles are established to guide progress with mentorship and sponsorship support. The SAA program requires responsibility and accountability of its fellows. "We will lose interest in selfish things and gain interest in our fellows. Self-seeking will slip away. Our whole attitude and outlook upon life will change." id. (The Promises).

The common goal of SAA is "to become sexually sober and to help other sex addicts achieve freedom from addictive behavior." id. (Common goals).

## F) HISTORY CONCLUSION

In regards to the Government's presumed history, plausibility has to be founded. Plausibility refers to "the scope of the allegation in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, the the plaintiffs (government) 'have not nudged their claims across the line from conceivable to plausible.'" S.E.C. v. Shields, 744 F.3d 633, 640 (10th Cir. 2014) (quoting Khalik v. United Air Lines, 671 F.3d 1188, 1191 (10th Cir. 2012). "The nature and specificity of the allegations required to state a plausible claim will vary based on context." Safe Streets All. v. Hickenlooper, 859 F.3d 865, 878 (10th Cir. 2011)). "The plausibility standard does not require a showing of probability that 'a defendant has acted unlawfully', but requires more than 'a sheer possibility.'" Parshall v. Health Food Assocs., Inc., No. 14-4005-JAR, 2014 U.S. Dist. LEXIS 76452, 2014 WL 2547761, at *1 (D. Kan. June 5, 2014). "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)(citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). The complaint must provide "more than label and conclusions" or merely "a formulaic recitation of the elements of a cause of action", so that "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" Papasan v. Allain, 478 U.S. 265, 286, 106 S. Ct. 2932, 92, L. Ed. 2d 209 (1986).

To set the record straight, the use of a statement of puffery is not a conclusion and based on the Defendant's factual history, there is no history of "collecting". The fact that the Defendant has taken accountability, responsibility, and shows a great remorse to his victims (see statements provided to the Sentencing Court by the Defendant) demonstrating his respect for the law and acknowledging his

-11-

actions while taking the time to address the concerns of the Court prior to sentencing; all proving that he does not need mental health treatment. He does not suffer from a condition or disease that is unusual or concerning to the government or the Court. His continued participation in SAA reflects his dedication to maintaining his current direction in perpetuity. There is no indication or suggestion in the Defendant's PSR that reflects the need for additional treatment.

### G) MODIFICATION OF CONDITION 1 OF DEFENDANTS SPECIAL CONDITION OF SUPERVISED RELEASE

As a compromise with the Court, and as a suggestion of the Defendant to meet the §3553(a) factors, the Defendant request the Court to modify Special Condition One (1) to read:

"Defendant shall continue attendance to weekly meetings with a SAA 12-Step Fellowship. Defendant's attendance will be verified by a reporting to the U.S.P.O. by his sponsor or a family member. Any changes to his meeting schedule will need to be approved in advance by the U.S.P.O."

This allows the Defendant to continue with his fellowship of SAA, addresses any accountability concerns with the Court, and fulfills the §3553(a) clause of "most effective manner". This also addresses the Defendant's previous completion of treatment at Begin Again Institute and Dr. Max Wachtel's therapy.

### H) SPECIAL CONDITION REQUIRING KEYSTROKE MONITORING

The statutory requirement that conditions of supervised release be reasonably related to the factors set out in 18 U.S.C.S. §3553(a)(1), (a)(2)(C), and (a)(2)(D) does not mean that every condition must be reasonably related to every factor: they are merely factors to be weighed, and the conditions imposed may be unrelated to one or more of the factors, so long as they are sufficiently related to the others. Even if a proposed condition meets this requirement, it must involve no

greater deprivation of liberty than is reasonably necessary for the purposes of supervised release - this is: to achieve deterrence, public protection, or offender rehabilitation.

The Defendant has already demonstrated and discussed how he is not nor was he ever a public safety factor, nor was the Government ever concerned about the Defendant over the six years prior to the filing of information. He had no restrictions regarding computer use or monitoring. Logically posited, how is the Defendant a risk to the public today after pleading to a crime six years prior, a time period in which he was granted Top Secret security clearance on multiple occasions. Yet still, for the purpose of supervised release, the Court imposes the most restrictive form of computer monitoring available. This goes directly and obscenely against the Sentencing Factors outline in 18 U.S.C.S §3583, demanding the "least restrictive conditions".

The instusiveness of "every keystroke monitored" and "24/7 monitoring" is unreasonable and is the most restrictive option as outlined in case law. Granted, while under Supervised Release the Defendant has limited liberty interest, but that does not fully remove his liberties, it simply restricts them within individualized reason.

With respect to the Fourth Amendment's particularity requirement, the United States Supreme Court has recognized that the Fourth Amendment ensures that a search will be carefully tailored to its justification, and will not take on the character of the wide-ranging exploratory searches the Framers intened to prohibit. Allowing 24/7 monitoring and recording of every keystroke goes against reasonable suspicion of the probation officer. "Reasonable suspicion exists when, considering the totality of the circumstances known to the officer at the time, the officer has a particularized and objective basis for suspecting wrongdoing." United States v. Hamilton, 591

-13-

F.3d 1017, 1022 (8th Cir. 2010). Monitoring every keystroke the Defendant makes violates liberties that are outside the interest of government, to include communication between his lawyer via e-mail or text, privacy of medical communications between his doctor via live chat or e-mail, and private communication between his wife or child in the respect of privacy of familial association via text messaging, a desktop app, or a cell phone message services. The Defendant has no history of illicitly communicating with minors, thus, making this type of condition unjustifiable to be put in place.

Over-seizing is an inherent part of the electronic search process that requires a court to exercise greater vigilance in protecting against any possibility that the process of identifying seizable electronic evidence could become a vehicle for the government to gain access to a larger pool of data that it has no probable cause to collect. An appropriate search protocol is the answer to protecting against the government searching data on an electronic device when it has no right to search that data.

Here, the Defendant is already subject to unannounced searches of his home and property, to include computers and cell phones. Just as the probation officer cannot search closed drawers or cabinets without reasonable suspicion, the probation officer must take into account that a computer is much like a home. United States v. Warshak, 631 F.3d 266, 286 (6th Cir. 2010)(recognizing that "email requires strong protection under the Fourth Amendment; otherwise, the Fourth Amendment would prove an ineffective guardian of private communication, an essential purpose it has long been recognized to serve"); "Individuals generally possess a reasonable expectation of privacy in their home computers." See, e.g., Trulock v. Freeh, 275 F.3d 391, 403 (4th Cir. 2001); Guest v. Leis 255 F.3d 325 (6th Cir. 2011) ("Home owners would of course have a reasonable expectation of privacy in their

-14-

homes and in their belongings - including computers - inside the home."); see also Leventhal v. Knapek, 266 F.3d 64, 73 (2d Cir. 2001)(holding that an employee "had a reasonable expectation of privacy in the contents of his office computer"); "An individual has a constitutional right to privacy which protects 'the individual interest in avoiding disclosure of personal matters.'" Whalen v. Roe, 429 U.S. 589, 599, 97 S. Ct. 869, 51 L. Ed. 2d 64 (1977). The Supreme Court has found fundamental rights in "personal decisions relating to marriage, procreation, contraception, family relationships, child rearing and education." Planned Parenthood v. Casey, 505 U.S. 833, 851, 120 L. Ed. 2d 674, 112 S. Ct. 2791 (1992). "The fundamental right of privacy protects citizens against government intrusion in such intimate family matters...These cases embody the principle that personal decision that profoundly affect bodily integrity identity, and destiny should be largely beyond the reach of government." id. at 926-27 (Blackmun, J. concurring/dissenting).

It is a known fact that communication between family members occurs via text message, email, FaceTime and Zoom that are secure and private from third-party and government intrustion. In United States v. Matteson, 327 Fed. Appx. 791; 2009 U.S. App. LEXIS 10681 No. 08-2176 (10th Cir. App. 2009)(vacated and challenged the conditions of keystroke monitoring as being a greater deprivation of liberty than is reasonably necessary to achieve the three purposes of §3583(d)(2), and can meet the three purposes by other conditions that are already in place with other supervised conditions.)

The modification of computer monitoring is supported by other circuit courts. Compare United States v. Sales, 476 F.3d 732-38 (9th Cir. 2007)(vacating computer monitoring as not narrowly tailored); United States v. Lifshitz, 369 F.3d 173, 192-93 (2d Cir. 2004)(vacating and remanding computer monitoring condition to

permit district court to evaluate potential overbreadth in the first instance); United States v. Goddard, 537 F.3d 1087, 1090-91 (9th Cir. 2008)(monitoring condition valid if narrowly construed); United States v. Holm, 326 F.3d 872, 879 (7th Cir. 2003)(random searches of probationer's computer "entirely reasonable"). Applying 24/7 monitoring and keystroke monitoring is a very broad condition that expands beyond the "least restrictive" means possible.

The Supervised Release conditions already in place for the probation officer to search the Defendant's home and property at any time with or without a warrant covers his computers and phone. When combined with the Defendant's history, this most intrusive form of monitoring is applied unreasonably. The goals of §3553(a) and §3583 can be met with unannounced searches of the Defendant's computer and phone when searching his home. Then, if reasonable suspicion of the probation officer occurs, a more in-depth search is justifiable and more restrictive conditions can be applied. It's logical to apply a more restrictive form of monitoring only when the Defendant has a history or if the Defendant violates any portion of his conditions. At that time, the court could apply a more restrictive condition under §3583(e)(2) if warranted. At this time, the Defendant has shown the Court that he has met the §3583(d)(1), §3553(a)(1), (a)(2)(B)-(D) without any conditions in place prior to sentencing.

## I) MODIFYING CONDITION FOUR (4) KEYSTROKE AND COMPUTER MONITORING AS APPLIED UNDER SPECIAL CONDITIONS OF SUPERVISED RELEASE

Due to the over-broad and deeply invasive monitoring condition of the Defendant's computer as imposed by the Court, this condition should be removed as it is already covered by another condition. If a condition of computer monitoring must be applied, it should be narrowly construed and in respect to the limited privacy rights the Defendant has within the Fourth Amendment. It should not include "over-seizing"

-16-

of communication that is deemed private outside the data collection scope that may be applied. A computer monitoring condition of some form may be reasonable, i.e. random computer and phone searches by the probation office, creating compliance with §3553(a) and §3583, while not creating a greater deprivation of liberty that is reasonably necessary to meet the goals of §3553(a) and §3583. Therefore, Special Condition Four(4) must be removed in the interest of §3553(a) and §3583, as it is met with other mandatory and court imposed Special Conditions.

### J) FINANCIAL OBLIGATION SPECIAL CONDITIONS

Conditions seven(7) thru eleven(11) should be removed as the Defendant has paid-in-full his restitution obligation prior to incarceration. The Defendant has no history of purchasing illicit or illegal content or service. The Defendant has successfully paid his restitution under §3553(a)(7), meeting that obligation, therefore Special Conditions 7-11 should be removed as they are not applicable to the Defendant at the time of his Supervised Release.

### K) CONCLUSION

The Defendant moves the Court to modify the conditions listed above in congruence with the supporting discussions provided. These changes satisfy the goals of §3553 and §3583 as outlined. By modifying the listed conditions, the Court will impose Special Conditions to Supervised Release that are sufficient, but not greater than necessary, based on the Defendant's §5D1.3(d)(5), §4241, §4247, §3553, and §3583 factors.

By these modifications, the Court can successfully clarify the conditions of Supervised Release without the Defendant having to first violate the conditions prior to modification as applied to the Defendant.

The Defendant respectfully submits to this Court his Motion to Modify Special Conditions of Supervised Release.

*The Defendant would like for the court to please excuse the minor spelling or grammar errors as he is using a 1991 type-writer with a type ribbon.

Respectfully Submitted

Joel Thomas, Defendant
Pro Se, on March 10, 2022

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of March 2022, a true and correct copy of the foregoing was mailed, first class postage prepaid and addressed as follows:

TO: United States District Court
    Office of the Clerk
    901 19th St
    Room A105
    Denver, CO 80294-3589

TO: United States Attorneys Office
    District Of Colorado
    1801 California Street
    Suite 1600
    Denver, CO 80202

Declaration under penalty of perjury

The undersigned declares under penalty of perjury that he is the movant in the above action, that he has read the above motion and that the information contained therein is true and correct. 28 U.S.C. §1746; 18 U.S.C. §1621

Joel Thomas, Defendant
Pro Se, March 10, 2022
FCI Englewood
9595 W Quincy Ave
Littleton, CO 80123

45461-013
United States Dist Court
Office of the Clerk
901 19TH ST
Room A105
Denver, CO 80294-3589
United States

45461-013
Joel Thomas
Federal Correctional Institution
9595 W Quincy Ave
Littleton, CO 80123
United States