UNITED STATES DISTRICT COURT
IN THE DISTRICT OF COLORADO

| | |
|---|---|
| UNITED STATES OF AMERICA | ( |
| v. | ( |
|  | ( CASE NO. 1:19-cr-00397-CMA |
| JOEL THOMAS | ( |
|  | ( |
| Defendant. | ( |

FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO
APR 08 2022
JEFFREY P. COLWELL
CLERK

## MOTION TO RECONSIDER

Comes now, Joel Thomas, Defendant, acting Pro Se, is seeking a reconsideration to his Motion To Modify Conditions of Supervised Release and this Court's ruling to Deny Modification To Conditions 1,4, and 6 (ECF# 61) and to review de novo for Due Process Procedural errors and possible Constitutional Liberty infringements to the Defendant with the applied Supervised Release Conditions.

A) GOVERNMENT'S POSITION SUPPORTING SEX OFFENDER EVALUATION AND TREATMENT

The purpose of sex offender assessment and treatment is to:

> "help those who have committed sex offenses accept responsibility for sexually deviant thoughts and behavior; (2) develop an increased level of recognition and focus on details of actual sexual behavior; (3) and recognize the arousal patterns, fantasies, planning, and rationalizations of their sexually deviant thoughts and behavior."

(From the U.S. Probation Office regarding supervised release condtions)(See https://www.uscourts.gov/services-forms/overview/probation-supervised-release-conditions)

As applied to the Defendant, he has met those three treatment goals listed above:

1) He has taken responsibility for his actions and his thoughts.
2) He has developed a significant level of remorse and recognition of his actions and his sexual behavior since the investigation began in 2013 and he continues this remorse and recognition to this day.
(3) He has developed cogent thought process of his sexual behavior, and has sought continuous accountability, responsibility and treatment through SAA,

These actions by the Defendant are clearly established via his character and history both before and after the committing of his crime nearly 10 years ago. He has maintained a healthy relationship with his wife of 17 years, and refrained from general criminal thoughts, and has continued SAA treatment, and avoiding illegal

-1-

activity and accessing the horrific and offensive sexual abuse images he once did nine years ago.

The Government cites "U.S.S.G. §5D1.3(d)(7). Specifically, as part of the 'Special Conditions (Policy Statement)', the advisory sentencing guidelines recommend '[a] condition requiring the defendant to participate in a program approved by the United States Probation Office for the **TREATMENT** and monitoring of sex offenders'. Id."

U.S.S.G. §5d1.3(d)(7) states "treatment" and monitoring of sex offenders. However, "treatment" is not defined and can range to a varying degree. If the Sentencing Commission defind "treatment", they would have, but "treatment" is a broad subject. Under §3553, "most effective manner" is used in particularized interest of the defendant. Now, since the Court insits on sex offender evaluation and/or treatment, a psycho-sexual evaluation will need to be performed to determine if intrusive treatment is needed. The term psycho-sexual means:

    Psycho: "The mind or mental process"
    Sexual: "of, characteristics of, or involving sex, the sexes, the organs
            of sex and their function, or the instincts, drives, behavior, etc.,
            associated with sex."
    Evaluation: "the process of evaluating something, or an instance of this."
    Treatment: "act, manner, method, etc of treating, or dealing with a person,
               thing, subject etc: medical, surgical, or cosmetic care. A systematic
               course of this."
(Websters New World College Dictionary, 5th Ed. 2020)

In other words; the mental process of involving sex. (e.g., mental health treatment involving the sex process of the mind.)

In order for mental health treatment to be applied under 5D1.3(d)(5), a particularized finding of the Defendant under §4241(b) and §4247(b) and (c) need to be performed prior to imposing mental health treatment. (i.e., sex offender treatment).

Under 5D1.3(d)(7): treatment can be any act, manner, method of treating or dealing with a person, thing, subject etc. Id.

Here to support the Defendants SAA group therapy recommendation as applied to him in the "most effective manner", the 2017 SMART Report has the most current

-2-

data available (compared with the archaic Sentencing Guidelines) and has reported that "Approximately one in 20 (4.6 percent) of internet offenders committed a new sexual offense of some kind during this time period (three years monitoring)...and 3.4 percent committing a new child pronography offense." (compared to 68 percent of all other non-sexual offenders), making the recidivism rate second lowest next to murder. The SMART Report also indicates and suggests that prosecutors and judges impose sentences and conditions that are more individualized. The SMART Report also suggests that "more intensive interventions are required only by a minority of internet offender, and are likely to be served well by less intensive interventions." (www.SMART.gov, P. 95-97). (United States Department of Justice, Office of Sex Offender Sentencing, Monitoring, Apprehending, Registering, and Tracking: www.SMART.gov)

U.S.S.G §5D1.3(d)(5) or (d)(7) is not a Standard Condition and cannot be applied **WITHOUT** (emphasis added) the particularized findings that a defendant needs mental health treatment as defined in 18 U.S.C. §4241(b) and (c).

The Defendant is not arguing that treatment in some cases is applicable; however, his history of successfully completing sex addiction treatment, his extensive therapy with Dr. Max Wachtel, and his continued voluntary participation in SAA group therapy treatment meets the individualized considerations outlined in §3553 and §3583, and are the most effective method to the Defendant. His SAA group **"TREATMENT"** meets the defination of 5D1.3(d)(7) of "treatment" as termed, and is the most effective form of treatment as applied to the Defendant's history and characteristics.

The Government states that the Defendant submitted an "Offense Specific Evaluation" in advance of his sentencing. It is correct that the Defendant did partake in an interview that is mandatory by the Probation Department, but the interview was not with a doctor, a psychiatrist, nor a psychologist. This interview was a three-hour interview with an officer of the Probation Office, regarding

-3-

the Defendant's general upbringing, family status, and his criminal history. The evaluator met with the Defendant once, and from a generic non-medical conversation, made a recommendation about his needs for treatment without out determining or performing a pyscho-sexual evaluation, therfore, guessing that the Defendant needs sex offender treatment (mental health treatment). This was not a clinical psycho-sexual evaluation or interview as required under §4241.

The Government also states that the Defendant had an opportunity to participate in "sex offender treatment in the Bureau of Prisons (BOP)." (ECF#60, P.6). Upon the initial arrival intake interview by the Psychology Department at FCI Englewood, the Defendant met with Dr. Boltz in February of 2020. The Defendant did not decline participation, he informed Dr. Boltz that he would like to have his family perform research on the BOP's program prior to committing to such an intensive program that has been under scrutiny since it is not supported or recognized by the United States Probation Office or the Colorado Sex Offender Management Board as a accredited program and cannot be applied as approved treatment in the eyes of the Probation Office. In addition, at the time of the interview with Dr. Boltz, the Defendant requested to be placed on the wait-list in case of any drop-outs. Shortly after, COVID-19 lockdown happened at FCI Englewood and all programing ceased for 18 months. In April 2021, the Defendant met again with Dr. Boltz to see where he was on the wait0list. The Defendant was informed that due to the continued lock-down and the backlog of participants, it would be 18-24 months before the Defendant would be able to participate. As of March 31, 2022, the Defendant's cell-mate is currently taking the program; in what should take 10-12 months to complete, is taking 12-14 months to complete due to the random outbreaks and lockdowns of the institution.

With the Defendant on a half-way house transfer order in 7-10 months, the Psychology Department ruled that he will not be able to participate in the program. The Defendant never met with Dr. Couf, let alone spoken to her regarding his

-4-

wait-list placement. Furthermore, the Defendant has filled out an internal survey for participating in programs offered by the Psychology Department. The Psychology Department has determined that the Defendant does not qualify for this program or any other program the Psychology Department offers due to his previous treatment.

The Government states that participation in Sex Offender Treatment is a critical mechanism for ensuring the safety of the community. The Government does not provide any data to support this recommendation for the Defendant, nor is the Government a clinical psychologist to make this determination. The Defendant is already participating in SAA group treatment therapy, demonstrating his volunteered commitment to continued recovery.

How is it then, during those six years after the investigation began, that only now, (after serving a prison sentence), taking responsibility for his actions, recognizing his past harm on society, with great remorse for his victims, and having demonstrated to this Court and the Government his respect for the law, that now, all of a sudden, he is a public safety factor. This is illogical and unfounded with no specific example by either the Court or the Government.

"An analysis of nine available follow-up studies that the internet offenders as a group, have a relatively low risk of reoffending compared to conventional contact sex offenders." (3.4 percent compared to 4.6 percent respectively) SMART Report, P. 100.

The Defendant knows his crime was hideous, he knows he caused harm, he has remorse and empathy for his victims, and takes full responsibility and accountability for his actions. The Government states that treatment and evaluation is consistently ordered for child pornography offenders in this district; however, the Government does not state if or how that determination was made. If other defendants had a §4241 hearing as required by law in that determination, then that condition was applied with procedural Due Process, if not, like in the Defendant's case, then his Due Process was no applied in the findings. Here, there is no record

or findings that suggest that the Defendant has taken a court-ordered psycho-sexual evaluation determing a diagnosis or mental health condition requiring mental health treatment prior to sentencing.

    The Court must factor §3553 when sentencing:

        (2)(A) - to reflect the seriousness of the offense, to promote respect
             for the law, and to provide just punishment for the offense;

        (The Defendant is in prioson (just punishment); six years prior to
        sentencing and incarceration, reflected on the seriousness of his
        actions and has been crime-free for close to 10 years now, demonstrating
        his respect for the law)

        (2)(B) - to afford adequate deterrence to criminal conduct:

        (The Defendant has been crime-free since 2013, understands his past
        actions on society and the harm it causes his family and the victims
        of this egregious crime)

        (2)(C) - to protect the public from further crimes of the defendant;

        (Defendant has demonstrated this from 2013 onward, and has a term of
        supervised release, along with a 15 year term of sex offender registration)

        (2)(D) - to provide the defendant with needed educational or vocational
             training, medical care, or other correctional treatment in
             the **MOST EFFECTIVE MANNER** (emphasis added).

        (The Defendant has completed sex addiction treatment, individualized
        therapy, and as voluntary by the Defendant, is continuing his
        participation in SAA group addiction therapy, meeting the condition
        of 5D1.3(d)(7), as in the most effective manner to the Defendant)

The Court must factor §3583(d)(1)-(3) when applying Conditions of Supervised Release:

    (d) - Conditions of Supervised Release -
    (1) - "is reasonably related to the factors set fourth in sections 3553(a)(1),
        (a)(2)(B), (a)(2)(C), and (a)(2)(D);
(Defendant has demonstrated and explained to the Court that he has met the conditions set fourth)
    (2) - involves no greater deprivation of liberty than is reasonably necessary
        for the purpose set fourth in section 3553(a)(2)(B), (a)(2)(C), and
        (a)(2)(D); and
(sex offender treatment is a form of mental health treatment as defined before and implicates a significant liberty interest in which the Defendant here has met these conditions as stated)(see <u>United States v. Dougan</u>, 684 F.3d at 1036 (10th Cir. 2012))
    (3) - is consistent with any pertinent policy statements issued by the Sentencing
        Commission pursuant to 28 U.S.C. §994(a)
(mandating Sex Offender Registration, nothing in the policy regarding mandatory mental health treatment, and in order for treatment to be applied, a §4241 hearing is required prior to sentencing)

The Sentencing guidelines recommend that "a condition requiring that the defendant participate in a mental health program (e.g., Sex Offender Treatment is a Mental Health Treatment Program as outlined previously) approved by the United States Probation Office" should be "imposed [i]f the court has reason to believe that the Defendant is in need of psychological or psychiatric treatment." U.S.S.G. §5D1.3(d)(5).

The Sentencing Court is disregarding the Defendant's Due Process procedure, without finding in advance of sentencing, the need for treatment as required under §3583(d)(2). The Tenth Circuit emphasized that 18 U.S.C. §3583(d)(2) requires conditions restricting a defendant's liberty to be "especially fine-tuned" to achieve the goals set fourth in §3553(a)(2)(B)-(D) -- deter crime, protect the public, and promote the defendant's rehabilitation. (citing United States v. Edgin, 92 F.3d at 1409 (10th Cir. 1996))

Here the Sentencing Court failed to make an individualized assessment and explain De Novo why it is imposing the conditions with a statement of "fine-tuned reasons, specific to the Defendant's reasoning for mental health treatment." The Court is required by statute prior to imposing a special condition that is of a significant liberty interest to hold a hearing and to obtain a report from a psychiatrist or psychologist ordered by the court to determine if treatment is needed. The judge cannot determine based on assumption, class of offense, or "what the district has done in the past" to apply a mental health treatment condition. There must, by law, be particularized findings to impose such a special condition. The boiler-plate application of a treatment condition is in violation of the defendant's Due Process rights and goes against §3583 factors when imposing such conditions. It is required by the court to follow §5D1.3(d)(5), 18 U.S.C.S. §4241 and §4247(a)(1)(C) when imposing sex offender treatment or evaluation (e.g., mental health evaluation or treatment). Because this Court failed to follow this procedure and has no official reported findings prior to imposing this condition, this condition cannot stand and must be removed as it was applied out of procedure.

-7-

The Defendant has demonstrated to this Court he has in-fact obtained treatment prior to incarceration, continues treatment while incarcerated (attending SAA group therapy meetings when they are available) and will continue treatment upon release. The imposition of additional treatment during supervised release without findings by the Court is a violation of Due Process and Procedure. Because the Sentencing Court failed to state the reasons for imposition at the time of sentencing, or even make a generalized statement at that time, the condition must be vacated. The Court has no particularized findings from a psychiatrist or psychologist to issue such a condition. The Defendant has no past history of sex offenses, and the instant offense is six years removed from sentencing, as have the Defendant's characteristics have changed. This, in addition to completion of more intensive therapy prior to sentencing, the modified requested condition meets the §3553 and §3583 factors in full.

The Sentencing Court failed to conduct a proper review and offered no explanation or statement of reasonings to apply a condition to the Defendant as the time of Sentencing. The Court uses United States v. Mike, 632 F.3d at 694 (10th Cir. 2011) who undertook a psycho-sexual evaluation prior to sentencing. "...emphasized the defendant's psycho-sexual evaluation to support the imposition of certain sex-offense special conditions". Id. Here, in this instance of the Defendant, no such evaluation was conducted to determine "sex-offense special conditions".

The only mandatory report that was submitted was the recommendation of the Probation Office report that was not a clinical evaluation and has no medical merit for making any suggestion on the mental state of the Defendant.

The only report submitted was by the Defendant's psychologist stating his significant recovery in taking responsibility, accountability, remorse, empathy, and development of his thought process and behavior.

As stated before, SAA continues that progress in the most effective manner as applied to him. He has met the purpose of the Sex Offender Assessment and Treatment prior to incarceration. There is no factor to consider here that could

-8-

further the interest of justice, respect for the law, accepting accountability and responsibility of his actions, or provide a more just punishment. As described in the Defendant's Motion to Modify Special Conditions, the most effective manner, as applicable to him is the continued treatment and attendance to SAA.

By imposing treatment that the Defendant has already completed successfully is imposing a condition of significant liberty restraint without the proper discovery procedure required by statute. How would redundant, repeat treatment protect the public? The Defendant has already demonstrated his lack of propensity for criminal activity for six years (nine with incarceration). The PATTERN Score and SMART Report (both created by and used by the DOJ) support this stance for the Defendant. The modification to Special Condition 1 will meet the goals of §3553 and §3583 in the most effective manner, without additional liberty restrictions in place and without findings.

In order for U.S.S.G. §5D1.3(d)(7) to apply as stated by the Government (ECF#60, P.8), "Treatment" is defined under §5D1.(d)(5), and must be determined through 18 U.S.C. §4241 and §4247 (sex offender treatment). This is a procedural process and CANNOT (emphasis added) be implemented without a §4241 hearing. If a hearing was not placed, §5D1.3(d)(7) cannot be recommended without determining a treatment as applied to the defendant. §5D1.3(d)(7) is mearly a recommendation based on a §4241 hearing and is not mandatory under any part of §3553 or §3583.

The Government points to two pieces of "ample evidence" (ECF#60 P.8):

1) The Defendant collected and distributed child sexual abuse images and was an active member in a dark-web forum.

These facts are disputed, none the less, the Defendant takes full responsibility of his crime and actions with significant remorse for his victims. Since 2013 he has been self-deterred from the heinous and regretted crimes that he committed, and has taken significant steps to understand his actions with complete respect for the law and respect to how this crime affects society and the harm it causes

-9-

to everyone.

    2) The Defendant has not completed the Sex Offender Treatment while in the custody of the BOP.

Due to COVID-19, all programing was halted for 18 months. The Defendant requested to be placed on the wait-list, and as of this Motion, the Sex Offender Treatment Program at the facility is no longer available to him due to his release date. The Psychology Department at FCI Englewood informed the Defendant that the program is not required due to his past treatment and the lack of time available at the institution.

The Government has no true and honest "supporting evidence". The Government cites U.S.S.G. §5D1.3(d)(7) recommendatoin, which, in order to be applied, a §4241 hearing needs to take place prior to sentencing. There is also no defination of "treatment", therefore, any type of treatment, including SAA can be applied, but in order for a "mental health treatment" to be applied, the §4241 hearing should have taken place.

The Government cites that the condition is "consistently ordered in the 10th District" (which demonstrates a boiler-plate application and not indivdualized implementation if the District bypasses the §4241 hearing and applies treatments as part of the class of crime and not individualized findings).

The Government finally includes a "Offense Specific Evaluation" as a "recommendation" by the Probation Office. There was no psycho-sexual clinical evaluation performed, or a diagnosis obtained during the interview. The interview was a standard interview performed by an agent with the Probation Office that lasted three hours at the Defendant's attorney's office. Again, whether or not the condition is appropriate is irrelevant. For the condition to be ordered by the Court, requires a legal, medical, and procedural diagnosis and that has not taken place.

B) **KEYSTROKE MONITORING TOO INTRUSIVE AND UNREASONABLY NECESSARY FOR THE DEFENDANT**

The Sentencing Court makes three claims that Keystroke monitoring is applicable due to:

1) The Defendant's sophisticated computer skills;

2) Encryption on his laptop; and

3) a post on a web forum "encouraging others to 'stay safe'".

To address these three "amply evidentral points";

1) The Defendant does not have, obtained, or has received any I.T. training or certificate, computer science degree, or has obtained or received any special coding certificate to have sophisticated computer skills. Accessing a web forum, on the internet, either on the "clear-net", or TOR browser can be obtained by anyone with a FireFox browser and a Google search. "TOR" is used by millions of people everyday, by the Government, Journalist, and the public. No special skills are needed to access the "TOR" network. "TOR" was created and provided by the United States Government to be used as an annoymous resource of the internet.

2) The Defendant used the standard method to created a username and password to set-up his laptop, as everyone does who has a internet connected device. This method is used by everyone who has a computer or access the internet. Some applications encrypt automatically, the stored content and is accessed with a username and password. It is very common to everyone who has a computer to have encrypted folders or requires a password to access the device.

3) The Defendant does not recall what "stay safe" implies in regards to his past activity on a web forum over nine years ago. In addition, what does a statement on a web forum have to do with the Defendant now? The Defendant accepts responsibility, has respect for the law, and knows these crimes are horrible. How and to what effect does a post on a web forum have to do with keystroke monitoring? What is the connection?

-11-

In <u>United States v. Blair</u>, 933 F.3d 1217; 2019 U.S. App. LEXIS 24030 No. 18-1220 (10th Cir. App. 2019) found that the monitoring conditions involve no greater deprivation of liberty than reasonably necessary based on the facts and circumstances and the characteristics of the defendant.

Here, the Defendant is not arguing that monitoring or inspection by the Probation Officer of the Defendant's devices is unnecessary, what is unnecessary and a great deprivation of his privacy liberty (although limited) than necessary is the application of keystroke monitoring. The broad surveillance of "keystroke" monitoring goes beyond a governmental interest in the Defendants initial motion and data collected by the government. (ECF# 57).

In addition to intrusivness of keystroke monitoring, this type of surveillance is along the same lines as a wire-tap order (§2518; wiretap act):

"the relevant statute permits a judge to issue an order authorizing the Government to intercept wire communications for in initial (but extendable) period of 30 days. <u>§2518(5)</u>. To obtain that order, the Government must submit an application that describes the particular offense being investigated as well as the type of communication it seeks to intercept; that sets forth the basis for an appropriate finding of "probable cause"; that explains why other less intrusive methods are inadequate, have failed, or are too dangerous to try; and that meets other requirements, showing, for example, authorization by a specified governmental official. <u>§2518(1)</u>. <u>§§2518(4)(a)-(e)</u>:
    a) Person whose communication are to be intercepted;
    b) nature and location of the communications facilities;
    c) particular description of the type of communication sought to be intercepted;
    d) statement of the particular offense which relates to the identity of the agency authorized to intercept;
    e) period of time during which the interception is authorized.

This type of invasivieness also violates the Defendant's Fourth Amendment Right under <u>Coolidge v. N.H.</u>, 403 U.S. 443, 467, 91 S. CT. 2022, 29 L.Ed. 2d 564 (1971); With respect to the particularity requirement, the Supreme Court has recognized that it "ensure that the search will be carefully tailored to its justification, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit." <u>Maryland v. Garrison</u>, 480 U.S. 79, 84, 107 S. Ct. 1013, 94 L.Ed. 2d 72 (1987); In <u>United States v. Carey</u>, 172 F.3d 1268, 1275 n.7 (10th Cir. 1999), this court recognized the particular Fourth Amendment issues surrounding the search and seizure of computer equipment. See

also Campos, 221 F.3d at 1148. The advent of the electronic age and, as we see in this case, the development of desktop computers that are able to hold the equivalent of library's worth of information, go beyond the established categories of constitutional doctrine. Id.

In United States v. Warshak, 631 F.3d 266, 286 (6th Cir. 2010) recognized that "email requires strong protection under the Fourth Amendment; otherwise, the Fourth Amendment would prove an ineffective guardian of private communication, an essential purpose it has long been recognized to serve."

Here, the unfetted access is analogous to GPS monitoring. The collection of unlimited data of the Defendant without particularity is similar to the cell-site location data collection under the Stored Communicatoins Act. 18 U.S.C.S. §2703(d). To access the Defendant's every keystroke without probable cause, or reasonable cause or suspicion is in violation of his limited Fourth Amendment rights.

There is no particularity when monitoring every single keystroke of the Defendant. There is no reasonable cause or suspicion, and there is over-broadness to over-seizing data that is not of governmental interest when this condition is applied.

The fact that the other methods to monitor the Defendant's computer activity, which do not impose a greater deprivation of liberty exists, yet the Sentencing Court ignores the fact that the probation officer can seize with "reasonable suspicion" items suspected at the time of physical searching. By imposing the most liberty restricted method of keystroke logging is not reasonable suspicion, and is unlimited and unfetted access to the Defendant's electronic devices.

This method is essentially giving the Probation Officer the "keys to the Kingdom", while providing him or her a bed to sleep in and to watch the Defendant's every move without governmental interest with maximum governmental intrusion.

This condition, as it stands, gives the Defendant absolute no privacy of his communication with his wife, child, doctor, attorney, or family relationship. Keystroke monitoring is to broad to be upheld as a condition of computer monitoring

where other methods can be used to meet the goals of §3553 and §3583.

Again, the Defendant asks how can he have zero restrictions the previous six years after the crime was committed, then after incarceration, he now has to have this type of monitoring applied, when the Government has not alleged or otherwise indicated the Defendant committing additional crimes or has had any other violations of the law. Again, illogical to apply this type of intense and invasive computer monitoring when the Defendant's history, treatment and characteristics prove differently.

On several occasions, the Supreme Court has indicated that searches of probationers may be pursued without a warrant and under a standard lower than that of probable cause. EAch case the Supreme Court has considered has, however, involved at least some quantum of individualized suspicion, whether phrased as "reasonable grounds", or "reasonable suspicion". Constant, unfetted monitoring down to the last keystroke without out "reasonable suspicion" is in violation of the Defendant's Fourth Amendment us "unreasonable search", even in the case of restricted and limited liberties the Defendant has under Supervised Release.

In closing, the Defendant respectfully asks this Court to Reconsider their ruling with a de novo review of the Defendant's argument relating to his Due Process and Procedure of applying a "mental health treatment" and the Constitutional considerations of the keystroke monitoring as applied to the Defendant as outlined in the forementioned Motion to Reconsider.

Respectfully Submitted

Joel Thomas, Defendant
Pro Se
April 5, 2022

I declare under penalty of perjury that I am the Defendant in this Motion, that I have read this Motion, and the information in this Motion is true and correct. See 28 U.S.C. §1746; 18 U.S.C. §1621.

*[signature]*

Joel Thomas, Defendant
Pro Se, April 5, 2022

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing motion was mailed to:

Clerk of the Court
Alfred A. Arraj United States Courthouse
901 19th Street, 2nd Floor
Denver, CO 80294

*[signature]*

Joel Thomas, Defendant
Pro Se, REG# 45461-013
FCI Englewood
9595 W Quincy Ave
Littleton, CO 80123

Mailed on April 5, 2022



◇45461-013◇
Joel Thomas
Federal Correctional Institution
9595 W Quincy Ave
Littleton, CO 80123
United States

◇45461-013◇
United States Dist Court
Office of the Clerk
901 19TH ST
Room A105
Denver, CO 80294-3589
United States

Case No. 1:19-cr-00397-CNS   Document 62   filed 04/08/22   USDC Colorado   pg 17 of 17