CO-PROB12D
(Revised 11/23-D/CO)

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

U.S.A. vs. Joel Thomas					DKT. NO. 1:19CR00397-1

## PETITION FOR SUMMONS AND COMPLIANCE REVIEW HEARING OF THE CONDITIONS OR TERM OF SUPERVISION

COMES NOW, Kenneth Evans, Senior United States Probation Officer, presenting an official report upon the conduct and attitude of defendant Joel Thomas, who was placed on supervision by the Honorable Christine M. Arguello, sitting in the United States District Court in Denver, Colorado, on January 13, 2020.  The defendant was sentenced to 48 months' imprisonment and 5 years' supervised release for an offense of Access with Intent to View Child Pornography, in violation of 18 U.S.C. 2252A(a)(5)(B) and (b)(2).  Supervision commenced on June 30, 2023 and is set to expire on June 29, 2028.  As noted in the judgment [Document 33 ], the Court ordered mandatory, special and standard conditions of supervision.  The probation officer alleges the defendant has violated the following terms and conditions of supervised release as set forth herein.

### STATEMENT IN SUPPORT OF SUMMONS AND MODIFICATION:

Since the defendant was sentenced, his Court file has been littered with motions and litigation regarding his imprisonment and conditions of release. The defendant has spent a lot of time and effort to avoid accountability for his crime. A lot of his arguments are centered around sex offense-specific treatment.  The probation office and treatment professionals are seeing his arguments continue in the community which is causing his demeanor and presentation to disrupt the treatment process.  It is noteworthy, the Court has responded to his arguments against sex offense-treatment and Internet restriction/monitoring conditions in Docket 61 and 68. The 10th Circuit Court of Appeals affirmed the District Court decision [Docket 76].  Despite the extensive litigation and clarification provided by the Court, the defendant continues to present the same arguments to the treatment professionals trying to further the Court's goals and the probation office responsible for assisting him in his rehabilitation.

On July 5, 2023, the terms and conditions of the defendant's supervised release were read and explained to him. He signed the terms and conditions of his supervision, acknowledging the conditions had been read and explained to him, and that he was given a copy of those conditions. As noted in the judgement, the defendant was required to comply with special conditions that restrict access to Internet capable devices, require monitoring software on approved Internet capable devices, and requires he participate and successfully complete a sex offense-specific evaluation and/or treatment program and comply with all the rules and regulations of the treatment program that are specified by the treatment agency. On December 12, 2023, the defendant was discharged from RSA, Inc. (RSA), the sex offense-specific treatment agency where he commenced treatment on August 3, 2023. The discharge was a result

of the defendant's patterned examples of failing to build a therapeutic relationship with therapists and veiled threats regarding litigation.  The defendant was on a Low Treatment Intervention Contract (LTIC) for violating RSA's rules regarding social media.

On March 12, 2023, I made my first contact with the defendant while he was housed at the residential reentry center (RRC) and under the jurisdiction of the Bureau of Prison (BOP).  During this meeting, I provided an introduction of myself and presented highlights of sex offender supervision to help prepare the defendant for his transition to supervised release.  In this meeting the defendant reported working at Multimedia Audio and Visual (MAV), denied access to Internet capable devices, and even went as far as stating his employer will await communication from the probation office before granting the defendant access to a monitored device.  On July 5, 2023, I completed his intake appointment and the defendant reported access to an unmonitored/unapproved Internet capable device by stating that he has a work computer.  The defendant was informed that he is in violation of the conditions of release as he failed to request to use the device, the probation office did not approve the device, and the defendant did not install monitoring software on the device.  A few weeks later, the defendant attended his intake appointment at RSA and reported access to work laptops, desktops, and a smartphone, which again were not approved by the probation office and were not monitored.  The undersigned successfully coordinated with MAV to install monitoring software on one laptop to further the defendant's employment.  The defendant had access to several unmonitored/unapproved Internet capable devices util the monitoring software was successfully installed on August 3, 2023.  The defendant's decision to withhold and misrepresent his job duties led to him being in violation of the conditions of release for over a month before the undersigned could properly guide him. Despite the probation officer's efforts to establish rapport and help guide the defendant through this process even before the term of supervision commenced, he elected to withhold critical information from our office which disrupts our ability to effectively monitor his risk in the community and facilitate his success.  The defendant's latest violation of RSA's treatment contract leading to his LTIC was due to continued withholding of information about his job rather than openly communicating his job requirements so his therapist and the undersigned could guide him.  The defendant's violation behavior delayed his contract signing with RSA at the outset of supervision as RSA felt it was not appropriate that he sign treatment contracts while being in violation of their program rules and the conditions of supervision.

It is also noteworthy to mention that in my meeting with the defendant on March 12, 2023, I spoke to him about the process of treatment referrals.  The defendant noted he had a specific agency in mind, and I informed him that the probation office would be responsible for the referrals.  I explained he would be referred to one of the two federally contracted agencies in the Denver metro area.  At the defendant's intake appointment on July 5, 2023, the defendant told this officer he had an intake scheduled the following day to the same agency he was informed I would not be referring him to just a few months earlier.  The undersigned believes this experience truly captures what our office and RSA have experienced thus far with the defendant.  He acknowledges that he presents with passive aggressive communication and entitlement when doing

| | | |
|---|---|---|
| Joel Thomas<br>1:19CR00397-1 | Petition for Summons and Compliance Review Hearing<br>Page 2 | February 8, 2024 |

homework assignments and independently working in the treatment setting with RSA. The defendant continues to hold the position that he did no wrong to influence his discharge from RSA. The defendant continues to argue that his participation in Sex Addicts Anonymous (SSA) has properly rehabilitated him and he feels his place in offense-specific treatment should be reserved for high-risk clients. Again, despite the Court and 10th Circuit Court of Appeals providing clarity in this area of contention, the defendant continues to let his core beliefs impact his compliance with supervised release conditions and the expectations of offense-specific treatment.

In the RSA discharge, the defendant's Child Pornography Offender Risk Tool (CPORT) indicated pedophilic or hebephillic interests, having child pornography videos, having child pornography text stories, and volunteering in the past in a role with high access to children. He was assessed as a low-moderate risk to sexually reoffend. The defendant completed an Offense Specific Evaluation with Front Range Forensics LLC on January 24, 2024 which also shows that he is a low-moderate risk to sexually reoffend. The evaluator determined he is "marginally amenable" for offense-specific treatment. If he continues to disregard expectations of offense-specific treatment and/or the Court, he would not be considered amenable for treatment. The evaluator referenced Narcissistic Personality Disorder, Mental Illness – coexisting anxiety and depression, and past trauma as responsivity factors. The defendant has several protective factors that would typically lead to success. The undersigned believes his personality disorder, entitlement, and his belief that he does not need offense-specific treatment continue to disrupt his chances of success. While RSA and the evaluator recommend a referral to offense-specific treatment, the undersigned supports same but feels a compliance review hearing before the Court will be an appropriate intervention to redirect the defendant before making an additional referral for offense-specific treatment.

### RESPECTFULLY REQUESTING THAT THE COURT WILL ORDER:

The issuance of a summons for the defendant to appear at a compliance review hearing.

I DECLARE under penalty of perjury that the foregoing is true and correct.

*s/Kenneth Evans*
Kenneth Evans
Senior United States Probation Officer
Place:   Denver
Date:    February 8, 2024

*s/Walter Vanni*
Walter Vanni
Supervisory United States Probation Officer
Place:   Denver
Date:    February 8, 2024