CO-PROB12C
(Revised 11/23-D/CO)

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

U.S.A. vs. JOEL THOMAS                                              DKT. NO. 1:19-cr-00397-1

### PETITION FOR WARRANT ON PERSON UNDER SUPERVISION

COMES NOW, Kenneth Evans, Senior United States Probation Officer, presenting an official report upon the conduct and attitude of defendant Joel Thomas, who was placed on supervision by the Honorable Christine M. Arguello, sitting in the United States District Court in Denver, Colorado, on January 13, 2020.  The defendant was sentenced to 48 months' imprisonment and 5 years' supervised release for an offense of Access with Intent to View Child Pornography, in violation of 18 U.S.C. 2252A(a)(5)(B) and (b)(2).  Supervision commenced on June 30, 2023, and is set to expire on June 29, 2028.  On February 8, 2024, a Petition for Summons on Person Under Supervision [Document 81] was requested and a Compliance Review Hearing was ordered and then held on February 22, 2024.  As noted in the judgment [Document 33], the Court ordered mandatory, special and standard conditions of supervision.  The probation officer alleges the defendant has violated the following terms and conditions of supervised release as set forth herein.

**RESPECTFULLY PRESENTING PETITION FOR ACTION OF THE COURT DUE TO CAUSE AS FOLLOWS:**

**VIOLATION(S) ALLEGED:**

1. **FAILURE TO REQUEST TO USE AN INTERNET CAPABLE DEVICE AND TO INSTALL SOFTWARE/HARDWARE TO MONITOR COMPUTER ACTIVITIES**

From November 2023 through April 2024, the defendant failed to notify his probation officer of all Internet access devices to which he had access and to install software/hardware to monitor computer activity, which constitutes a Grade C violation of supervised release.

On or about April 22, 2024, Senior USPO Maravilla Fontes and I completed a home visit and learned the defendant possessed an unauthorized/unmonitored Internet capable Motorola smartphone (Model: moto g play (XT2271DL); IMEI: 354215681840084).  Despite the defendant's continued denial, the device was in the immediate vicinity of the defendant during the home visit and his wife stated she had never seen the device.  The device was also actively connected to the defendant's home Wi-Fi network and a VPN network.

A forensic search of the device further displayed Gmail correspondence with the defendant's e-mail address, joelsthomas99@gmail.com, and Wi-Fi connectivity with his home (TheDood5G and TheDood2G) and work(+MAV+) Wi-Fi networks.

The undersigned and the defendant's sex offender treatment agency did not authorize his use of the noted Internet capable devices.  On May 13, 2024, the defendant admitted to possessing/purchasing the unauthorized Motorola smartphone.

2.  **MAKING FALSE STATEMENT(S) TO THE PROBATION OFFICER**

On or about April 22, 2024, the defendant stated in response to a question from the probation officer that the unauthorized Motorola smartphone belonged to his son, when, in fact, the unauthorized phone was accessed and possessed by him, which constitutes a Grade C violation of supervised release.

On April 22, 2024, Senior United States Probation Officer Maravilla Fontes and this officer completed an unannounced home visit at the defendant's residence.  Officers were greeted by the defendant's wife, who noted the defendant was present and upstairs.  Officers gained access to the home and the defendant walked downstairs.  After walking through the residence, this officer observed a cellphone in the immediate vicinity of the defendant's work laptop.  I asked the defendant if the cellphone in proximity to his work area belonged to him, to which he did not respond.  Instead, the defendant picked up the device and I immediately recognized that it was not his approved device.  The defendant stated the phone belonged to his son.  His wife came upstairs and immediately stated, "I have never seen that phone."  She successfully contacted her teenage son at school and asked him if he introduced the phone to the home, which he denied.  I observed the unauthorize Motorola smartphone was connected to Wi-Fi and a VPN network.  I asked the family their Wi-Fi SSID and it was confirmed the device was in fact connected to the home Wi-Fi network.  The defendant continued to deny accessing the phone and having knowledge of who the phone belonged to.  It should be noted, the unauthorized Motorola device had a passcode that was not provided by the defendant.

The defendant later reported the phone was inadvertently placed in his work bag due to a chaotic work environment.  He stated he mistakenly thought the phone belonged to his son because his son recently accompanied him to work.  The defendant stated he has colleagues that could corroborate his story.

The defendant completed a specific issue polygraph on May 8, 2024, with a focus on the Motorola smartphone.  The examiner asked three questions surrounding the unauthorized device and the results were indicative of deception. It is the examiner's belief that the defendant is not being honest regarding his history/access to the unauthorized Motorola smartphone.

A forensic evaluation of the unauthorized Motorola smartphone was completed and provided more details surrounding the device.  The device is a Motorola moto g play (2023); IMEI: 354215681840084; IMSI: 311480010274830; Number: 720-460-6761; Operating System: 12; Security Patch: 2024-03-01; Chipset: MT6765H. Inside the device was a ScanDisk Ultra Plus 128GB SD card. The examiner observed Gmail correspondence addressed to joelsthomas99@gmail.com was recovered from the

Case No. 1:19-cr-00397-CNS    Document 86    filed 05/14/24    USDC Colorado    pg 3 of 4

Joel Thomas  
1:19-cr-00397-1

Petition for Warrant on Person Under Supervision  
Page 3

May 14, 2024

device. One message was dated November 17, 2023, and a second was from January 3, 2024. The device was connected to the following Wi-Fi networks: TheDood5G, TheDood2G, whose network passwords are sp1der66 and sp1der67g, respectively. The device was also connected to the +MAV+ Wi-Fi network, which has a password of MAV1234567890$.

On May 13, 2024, during a meeting with his offense-specific therapist, this officer, and wife (who attended virtually), the defendant admitted to purchasing/accessing the unauthorized Motorola smartphone.

3. **FAILURE TO COMPLY WITH THE RULES AND REGULATIONS SPECIFIED BY THE SEX OFFENDER TREATMENT AGENCY**

On May 14, 2024, the defendant was unsuccessfully discharged from Teaching Humane Existence (THE), in Denver, Colorado, the sex offender treatment program in which the probation officer had directed him to participate, which constitutes a Grade C violation of supervised release.

On March 6, 2024, as directed by the probation officer, the defendant initiated sex offender specific treatment services by signing and agreeing with conditions outlined in THE's treatment contract, which specified the rules and regulations of the program.

On May 14, 2024, the defendant was unsuccessfully discharged from the THE's program due to violating the rules and regulations specified in his THE treatment contracts and the terms and conditions of his supervised release. The defendant's violations included having a pattern of deception, secret keeping, and engaging in additional sexually abusive behaviors with what appears to be Child Sexual Abuse Material (CSAM).

It is THE's opinion that the defendant is not currently appropriate for community-based offense specific treatment and is in need of a higher level of containment.

### STATEMENT IN SUPPORT OF ACTION/JUSTIFICATION

Based on the nature of the defendant's current conviction and the alleged violations, the probation officer requests a warrant for the defendant's arrest due to the potential danger presented by the defendant. The defendant possessed an unauthorized smartphone, persistently denied access, and even went to the extent of blaming his teenage son for introducing the contraband to the home. The device has since been tied to him and there is indication that he continued to access CSAM.

On May 13, 2024, the defendant admitted to purchasing/accessing the device. More importantly, he reported suicidality. On May 14, 2024, the defendant and his family reported he was committed to the Veteran Administration Emergency Room for a

Case No. 1:19-cr-00397-CNS   Document 86   filed 05/14/24   USDC Colorado   pg 4 of 4

| | | |
|---|---|---|
| Joel Thomas<br>1:19-cr-00397-1 | Petition for Warrant on Person Under Supervision<br>Page 4 | May 14, 2024 |

suicide attempt.  The defendant's conduct presents an immediate risk to the community and himself and a warrant is appropriate to mitigate his risk.

### RESPECTFULLY REQUESTING THAT THE COURT WILL ORDER:

The issuance of a warrant due to violation(s) of supervised release and, subsequent to the arrest of the defendant, that the Court consider revocation of supervision.

I DECLARE under penalty of perjury that the foregoing is true and correct.

*s/Kenneth Evans*
Kenneth Evans
Senior United States Probation Officer
Place:   Denver
Date:    May 14, 2024

*s/Walter Vanni*
Walter Vanni
Supervisory United States Probation Officer
Place:   Denver
Date:    May 14, 2024

### PRELIMINARY ADVISORY REVOCATION GUIDELINE CALCULATION:

The defendant was originally convicted of a Class C felony, thus the maximum sentence allowed upon revocation is 2 years' imprisonment, pursuant to 18 U.S.C. § 3583(e). Based upon Chapter 7 of the U.S. Sentencing Guidelines, the most serious conduct alleged as a violation of supervision is considered a Grade C violation.  The defendant's criminal history is a Category I, thus the advisory guideline range for revocation is 3-9 months imprisonment.

### STATEMENT IN SUPPORT OF DETENTION AT INITIAL APPEARANCE:

Based on the defendant's performance while on supervision, the probation officer recommends the defendant be detained pending revocation proceedings.  Pursuant to 18 U.S.C. § 3143(a), the defendant is viewed as presenting a risk of danger to the community.  Based on his violation conduct, history and characteristics, and repeated disregard for Court Orders and law.  Pursuant to F.R.Crim.P.Rule 32.1(a)(6), the burden of establishing by clear and convincing evidence that the person will not flee or pose a danger to any other person or to the community rests with the defendant.