UNITED STATES COURT

10th Circuit, District of Colorado

**FILED**
UNITED STATES DISTRICT COURT
DENVER, COLORADO

MAY 05 2025

JEFFREY P. COLWELL
CLERK

UNITED STATES OF AMERICA

Plaintiff

Case No. 1:19-CR-00397-CMA-1

District of Colorado

v.

JOEL THOMAS

Defendant

ANTICIPATORY

MOTION TO OBJECT, MODIFY, CLARIFY CONDITIONS OF SUPERVISED

RELEASE

Comes now, I, Joel Thomas (me, my, I, mine), proceeding Pro Se, filing my objection prior to my Supervised Release Revocation hearing to give the Court ample time to review my lengthy objection, and for the Court to review, modify and Clarify my conditions of supervised release prior to being re-imposed at the combined Revocation and Sentencing hearing.

I believe this is my opportunity to object and this Motion is ripe for review. "Once a term of supervision is revoked, 'it has been annulled, and the conditions of that term do not remain in effect." United States v. Lupold, No. 19-10294 (9th Cir. Mar 11, 2020) (Quoting United States v. Wing, 682 F.3d 861, 868 (9th Cir. 2012).

* Motion is 15 sheets / 30 pages / Front-back
  2 Envelopes

1

"Because he failed to make this objection at the fourth revocation hearing..." United States v. Salazar, 24-1050 (10th Cir. Feb 21, 2025) (showing that I must object to conditions being imposed or reimposed at the revocation hearing). As this "Anticipatory Objection" falls within the sentencing hearing. See United States v. Breimeister, 23-20326 (5th Cir. 2025)

A)     AUTHORITY

A district court can decide a motion to modify "based on evidence that was available at the time at the original sentencing". Also "A district court retains the discretion to determine whether there are valid reasons to modify." See United States v. Begay, 631 F.3d 1168, 1172-73 (10th Cir. 2011).

Because I'm not using § 3583(e)(2) as a backdoor to challenge the legality of a sentence, I'm objecting to the conditions that are most likely to be re-applied and to bring to attention to the Court, the impermissibilities of the United States Probation Office (P.O.), restrictions, actions and mandates that affected my fundamental rights, which I'll discuss in the following pages. I'm also filing this to prevent a district court an abuse of discretion when it relies on an incorrect conclusion of law or clearly erroneous finding of fact. See: United States v. Haymond, 139 S. Ct. 2369, 204 L. Ed. 2d 897 (2019) (similar violation occured); Haymond, 869 F.3d 1153 (10th Cir. 2017); United States v. Rattle, 706 F.3d 1313, 1317 (10th Cir. 2013).

2

## B) OBJECTIONS TO CONDITIONS #4 AND #6

1) Condition #4 Reads:

"Your use of computer(s) and internet-capable device(s) will be limited to those you request to use and which the Probation Office authorizes (my emphasis added) The Probation Officer must not prohibit lawful internet use (my emphasis added) except to impose restrictions on the types of computer(s) or internet-capable device(s) that you may use..."

2) Condition #6 Reads:

"You must allow the Probation Officer to install software/hardware... on any (my emphasis added) computer(s) you are authorized by the Probation Officer to use."

See (Doc. #33 at 5)

## C) DISCUSSION

"Where a broad condition of supervised release is ambiguous and could be read as restricting a significant liberty interest, We construe the condition narrowly so as to avoid affecting that significant liberty interest." United States v. Bear, 769 F.3d 1221, 1230 (10ᵗʰ Cir. 2014)

In United States v. Kunz, 68 F.4ᵗʰ 748 (2nd Cir. 2023) the court explained that "a restriction limiting a supervisee to just one internet-connected device would pose a significant burden on his liberty, and therefore would need to be imposed by the court and justified by particularized on-the-record findings". Id. at 767 (taken from United States v. Love, 24-1706-cr (2nd Cir, Apr. 8, 2025)

   Additionally, the wording of Condition #4 can restrict my access to the internet because the P.O. could deny all devices, therefore, denying me access to the internet. See Kunz explaing this better than I can.

1) COMPLAINT
   a) The P.O. restricted me to a single internet-connected device in March 2023. This device, a employer-owned laptop, was mandated by the P.O. to install monitoring software on it. The employer also issued me a company cell phone (which all employees recieve) for work specific duties. The P.O. contacted my employer telling them I was not allowed a cell phone issued by the company, and that the laptop issued to me must have monitoring software on it, otherwise I could not be employed there. This laptop was the only internet-connected device I was permitted to have, even though it was not a personal device.
   b) The P.O. had me remove and denied me use of

4

My previously owned television located in my family room. I was not allowed to purchase a new television in the future because it would be a "smart TV".

   c) The P.O. made me notify third-parties of my risk, to include: my wife, my parents, my employer, my SAA sponsor, my friends, and my wife's family (in-laws).

   d) I was denied access to specific rooms inside my own home and was mandated to install a door lock into my home office, to prevent my access.

   e) I was denied to participate in my SAA meetings in-person or virtually due to the fact that it was considered "anonymous" (even though it was supported by treatment for me to attend).

   f) I was denied access to "lawful" websites and social media, to include YouTube, Linked In, Facebook, etc; as well as Apps / Phone Apps

   g) P.O. imposed Occupational Restrictions, hindering, obstructing, and not allowing me to maintain my Job functions on multiple occasions.

Additionally, because I could not use a smart phone, I could not use: Uber, Lyft, ADP "Punch-In", Google, Google Maps, Lime scooters, RTD or view RTD maps or delays, Vinmo, Cash App, Country Companies (Good Driver Discount App (CAR App to monitor my driving), Zoom, Audible (Theripist recommended App), Google calendar, You Tube, Kaiser medical app, Colorado DMV (digital license/ID), Ring security app, etc... or QR code reader.

<u>5</u>

## 2) ADDRESSING THE COMPLAINTS IN DETAIL

### a) Limitation to a single internet-connected device

The restriction/limitation of a single internet-connected device and excluding that device to be a smart phone, is denying me a virtually indispensible device needed in today's society.

As technology has become omni-present in modern life, the increase of consumer devices, most notably smart phones and smart TVs, it is virtually impossible to purchase these devices without internet connection, and to use a non-internet device in todays society, schooling or workplace is unheard of. With over 400 million smart phones in use in the U.S. alone, indicates further, that smart phones are essential for a person to successfully function in society today.

"Modern cell phones are not just another technical convenience ... According to one [2013] poll, nearly three-quarters of smart phone users report being within five feet of their phone most of the time." <u>Riley v. California</u>, 573 U.S. 373, 395, 403 (2014)

[10 years ago] ... modern cell phones, which are now pervassive and insistant part of daily life that the proverbal visitor from Mars might conclude they were an important feature of human anatomy.

The term "Cell phone" is itself misleading shorthand.

Virtually all these devices are in fact mini computers that also happen to have the capacity to be used as telephones. In fact, the Federal Government classifies a "smart phone" as a "computer". See Riley. (There fore, the P.O. denied me access to a "computer"). They could easily be called cameras, video players, televisions, maps, newspapers, government IDs and Forms, car keys, wallets, shopping malls, drive-thru / take-out / fast food/delivery.

The daily necessity of having a smart phone is intensified and required to function in the work place. From scheduling to "Punching-In" on the ADP App (which I could not do, so I had to call my manager everytime I arrived, left or requested time off, creating a hinderance of my employment due to not being able to work as efficiently as my co-workers). Over 80% of the work force chooses to use a smart phone over a computer to check e-mail, attend virtual meetings, communicating with co-workers and performing regular tasks.

The "interest drives the American economy and serves, everyday, a critical tool for American citizens to conduct commerce, communicate, educate, entertain, and engage in the world around them." In re: Protecting and promoting the open internet, 30 FCC Rcd, 5601, 5603 A1 (2015).

As stated in United States v. Blair, 933 F.3d 1271 (10th cir. 2019) "... Under its new Computer and Internet Monitoring Program (CIMP) and the Probation Officer Manual explained that "offenders are premited to use a computer and access

7

the internet..." (quoting _United States v. Ullmann_, 788 F.3d 1260, 1262 (10th Cir. 2015). The CIMP denied use of social media.

As my condition reads much like in _Blair_, it is overbroad as far as the PO restricting me to a single device, which cannot be a smart phone (computer) as imposed by the P.O. This creates a "greater deprivation of liberty than is reasonably necessary" and a "complete ban of a means of communication that has become the major componet of moder life". (referencing of a smart phone and smart TV) (see _Ullmann_ at 1261).

Unfortunatly, the plain language of the Courts special condition #4 and #6 has these impermissible deligation traps. Both relevant passages purports to restrict me to one internet-connected device or delegate to the P.O. the authority to determine how many devices I may use.

The conditions order the P.O. a significant liberty delegation, which simply orders the P.O. any device I intend to use is up to the P.O., who is empowered in their decision making, which can deny any device and how many devices I may use.

This is an impermissible delegation of authority by leaving too much to the probations discretion, and leaving the door ajar for the P.O. to unilaterally alter my terms in the future.

While a district court may delegate to probation authority

"over certain minor details (my emphasis added) of Supervised Release", it may not delegate "decision making authority which would make a defendant's liberty itself contingent on a Probation Officer's exercise of discretion." United States v. Birkedahl, 973 F.3d 49, 54 (2nd Cir. 2020)

Although not listed specifically in the Special Conditions #4 and #6, the P.O. specifically denied me personal use of a smart phone (computer), restricted me to a single employer-owned laptop, and had me remove and denied me from purchasing a smart TV for my family room in my home.

As explained in Kunz at 748, 767, "a restriction limiting a supervisee to just one internet-connected device would pose a significant burden on his liberty, and therefore would need to be imposed by the court and justified by particularized on-the-record findings". "Any condition that affects a significant liberty interest... must be imposed by the district court and supported by particular findings and does not constitute a greater deprivation of liberty than reasonably necessary to accomplish the goals of sentencing." United States v. Matta, 777 F.3d 116, 123 (2d Cir. 2015).

The limitation to a single device has severely restricted my ability to engage with today's society while on supervised release. The P.O. effectively prevented me from choosing between a smart phone (which was denied), a computer, or some other personal internet-connected device. I could not have both a smart phone and a computer, which both can be monitored.

9

There are countless, innocent reasons for having two internet-connected devices, and is a common practice of the general public, and employers to issue employees a smart phone.

Possessing multiple internet-connected devices is analytically similar to, for instance, possessing multiple cars; though they can potentially be used in criminal activities, there is a myriad of legitimate, legal uses as well, and are required in society today.

Even setting aside the proliferation of the "Internet of Things" (I.O.T.), which has exploded the category of devices that could qualify as "internet-connected", See Chris Jay Hoofnagle et al., The Tethered Economy, 87 GEO. WASH. L. REV. 783, 785 (2019), such a restriction as stated before has forced me to choose between using a computer or using a smart phone (which was denied), both of which are "indespensible to participation in modern society." United States v. Eaglin, 913 F.3d at 98, quoting Carpenter v. United States, U.S., 138 S. Ct. 2206, 2220, 201 L.Ed. 2d 507 (2018)(discussing cell phones); United States v. Peterson, 248 F.3d at 83 (same for computers)

b) Smart TV removal from home and denied use of one.

By the P.O. denying me use of my previously owned T.V., located in my home, and replacing it with a non-smart TV is asking me to do the impossible. The

availability of non-smart TVs to purchase new is impossible or cost-prohibited. I have contacted several manufactures while on supervised release to purchase a new, non-smart tv (Sceptre, RCA and Samsung), who in the past sold non-smart TVs. These manufactures have discontinued these products due to the lack of demand and the evolution of streaming networks and shows, which is the norm today.

In re: smart television; streaming (programs) have supressed cable as top way to consume T.V.. See Axios, httpi//perma.cc/M7XR-VRZH (Aug. 8, 2022). Broadband (streaming) is ubiquitos, with over 90% of all households in the U.S. having broadband internet subscriptions. Daniela MeJia, Computer and Internet Use In The U.S., 2021, U.S. Cenus Bureau (June 18, 2024); referring to streaming subscriptions such as: Peacock, HBO+, Disney+, Hulu, Amazon Prime, ESPN+, Apple+, etc...

In short, non-smart TVs are simply not available anymore. Take a walk into Walmart and Target, and the availability of a non-smart tv is nil. Forcing me to obtain a non-smart TV, or a product that is not commercially available is asking me to do the impossible.

Furthermore, during the home inspection, the P.O. can inspect the T.V. history to be sure I am in compliance of not committing further crimes. (Even though my crime DID NOT involve a Smart TV or social media).

C) The P.O. made me perform third-party notifications
to my family, my wife's family, my employer, my SAA
sponsor, and my friends. That condition (Standard
Condition 12) was not applied to me I believe.

The P.O. mandated that I obtain a third-party
offense disclosure form from my wife, my parents, my in-laws,
my employer (occupational restriction), my SAA sponsor, and whom
ever I wanted to associate with on a constant basis, prior
to me associating with them. This blanket notification
requirement violated the ruling in United States v. Cabral, 926
F.3d 687 (10th Cir. 2019) and U.S.S.G. § 5D1.3, by imposing
a occupational restriction upon me. This is a violation of
Judicial authority and the Due Process Clause of the Fifth
Amendment.

Because the district court did not impose this
risk-notification clause, and the P.O. took it upon themselves,
demonstrates that the P.O. took this Judicial authority
in a manner that did implicate a liberty interest without the
Courts order. "The Probation Office cannot determine nature
and extent of punishment; further explaining that such conditions
infringe on a fundamental right, where, for example, defendants
must notify family of risk". United States v. Golightley, No. 19-
3135 (10th Cir. Dec 29, 2020).

The mandate of the P.O. to notify third parties
without a court review or order, and the Court has not

12

made any particularized findings to support this condition, or
on-the-record facts, the Court should remove this mandate by
the P.O.

D) The P.O. restricted access to rooms inside my home

The P.O. required I install a lock to my home office
door, to prevent me access to that room inside of my own home.
By the Government forcing me from a room in my home is a
un reasonable governmental intrusion.

"In turn, our Founders recognized through constitutional
guarantees `the right of a man to retreat into his own home
and there be free from unreasonable governmental intrusion.'"
Silverman v. United States, 365 U.S. 505, 511 (1961)(Fourth
Amendment)

Here, by denying me access to my own home without
specific, individualized reasons, and ordered by the P.O. to prevent
me access to my homes home office, is an impermissable delegation
of authority, because it was not founded by the Court, nor a
condition of my supervised release. See also Lawrence v. Texas, 539
U.S. 558, 562 (2003) ("Liberty protects the person from unwarranted
governmental intrusions into a dwelling or other private places. In
our tradition, the State is not omnipresent in the home.")

"The home is `the most constitutionally protected
place on earth.'" United States v. Craighead, 539 F.3d 1073 (9th
Cir. 2008). This should not be an understatement... "The
home is perhaps the most sacrosanct domain, where one's

13

Fourth Amendment interest are at their zenith". _Fisher v. City of San Jose_, 558 F.3d 1069, 1082 (9th Cir. 2009)

The P.O. can search my home at any time, yes, I have that right diminished, but requiring me limited access in my own home is plainly unreasonable. I believe this act of the P.O. infringes on my fundamental right to "establish a home..." by denying me access to my home. See; _Meyer v. Nebraska_, 262 U.S. 390 (1923) at 390.

By the P.O. restricting me access to my home, is not only governmental intrusion, is unreasonable, not minimally restrictive and it does not serve a governmental interest. Denying me access to my home is not a minor-decision making authority and should not be left up to the P.O. This restriction imposed by the P.O. must be removed.

E) The P.O. prevented me from participating in my 12-Step SAA program because it was "anonymous".

The P.O. denied me permission to attend SAA meeting because they are "anonymous". To be clear, on-the-record findings will show that my participation at SAA meetings is essential to my treatment, and furthermore, my treatment therapist recommend that I continue attending the SAA meetings. I believe the P.O. infringed on my First Amendment Right to participate in anonymous speech. "Anonymity is a shield from the tyranny of the majority." _McIntyre v. Ohio Elections Commission_, 514 U.S. 334, 342,

14

J. Thomas - 075970
S.D.C.D.C.
8522 7th St.
Gering, NE 69341

© USPS 2019

- LEGAL MAIL 1 of 2 -

80294$0003

Federal Courthouse
United States 10th Cir. Courthouse - Dist. of Colorado
Court Clerk
Attn: Hon. Judge C. Sweeney
1929 Stout Street
Denver, CO 80294



THIS ENVELOPE IS RECYCLABLE AND MADE WITH 30% POST CONSUMER CONTENT

FSC
MIX
Envelope
FSC® C137131

U S A ★ F O R E V E R

115 S. CT, 1511, 131 L.Ed 2d. 426 (1995). Because it is on-the-record, and my participation in SAA is an effective form of treatment, the P.O. denied me access to past, successful programs that aided in my rehabilitation, this was an illogical denial that prevented me from participating in anonymous speech and 12-step treatment. This restriction should be removed.

F) I was denied access to "lawful internet use", i.e. Websites, and social media, to include: YouTube, LinkedIn, Facebook, etc; as well as Apps / Phone Apps (denial of smart phone use).

To begin... this is a lengthy discussion. Three major cases the Supreme Court has ruled that social media is a fundamental First Amendment right of protected speech.

    1) The Supreme Court has made it clear that First Amendment Protection for speech extend fully to communication made through the medium of the internet (see Reno v. ACLU, 521 U.S. 844, 870, 117 S. CT. 2329, 138 L.Ed. 2d. 874 (1997)

    2) The Supreme Court held that "to foreclose access to social media altogether is to prevent the user from engaging in the legitimate exercise of First Amendment rights". Packingham v. North Carolina, U.S. 137 S. CT. 1730, 1737, 198 L.Ed 2d. 273 (2017)... "Social media platforms have

15

become the modern public square". *Id.*

3) "In just a few years, they have transformed the way in which millions of Americans communicate with family and friends, perform daily chores, conduct business, and learn about and comment on current events. The vast majority of Americans use social media, and the average person spends more than two hours a day on various platforms. Young people now turn to social media to get the news, and most of them, life without social media is unimaginable." *Moody v. Netchoice, LLC.*, 144 S. CT. 2383, 219 L. Ed 2d 1075 (2024)

The Supreme Court in *Packingham* also said, "... it restricts access to the principle source of knowing current events, checking for employment, speaking and listening in the modern public square, and otherwise exploring the vast realms of human thought and knowledge." *Id.* at 1737. It found that no state interest significant enough (my emphasis added) to justify the "complete bar to excersize of First Amendment rights on website integral to the fabric of our modern society and culture." *Id.* at 1737-38 (see *United States v. Morris*, 37 F. 4th 971 (4th Cir. 2032).

16

Because the Supreme Court has demonstrated that
social media is a significant fundamental right to access
under the First Amendment protection, having the P.O.'s
imposition of complete bans of accessing social media as
outlined in the CIMP, is an impermissible delegation
of authority because the P.O. is in fact denying me
a fundamental right as defined by the Supreme Court.

Under Packingham, I understand that it applies to
persons not under supervised release, however, the court
can impose conditions that restrict that right. Much like
in United States v. Eaglin, 913 F.3d 88, 95 (2nd Cir. 2019)
a supervisee has an analogous right to access adult
pornography, but when a condition of supervised release
affects a fundamental right under the First Amendment,
such as restricting or limiting access to social media (or
adult pornography for that matter) a more searching
review must be taken before that restriction is imposed
by the court. (Holding that conditions "prohibiting access
to adult pornography" are "unusual and severe".)

While a district court may delegate to probation authority
"over certain minor (my emphasis added) details of supervised
release", it may not delegate "decision making authority
which would make a defendant's liberty contingent on a
probation officer's excercize of discretion". United States v.
Birkedahl, 973 F.3d 49, 54 (2nd. Cir 2020). This concern

17

of the district court empowering the P.O. to make extra judicial
updates that may meaningful restrict my liberty, I find problematic,
because it gives the power of the P.O. to determine what
First Amendment speech I can participate in, or deny me
complete access to social media. (Which they have done).

Because the Supreme Court has found that social media
access does affect an individuals First Amendment right, and
where a supervisee has diminished rights, and when the
Government imposes a condition that affects that significant
protected right, the imposed condition must come from the
court because the condition must be "sufficiently evident"
and can be "discerned" from the record. Further, the
Supreme Court cajoled to "excersize extreme caution" before
rendering sweeping pronouncements concerning the interplay
between the First Amendment and the internet.

The P.O. imposed, in their CIMP, a complete
blanket ban of social media access, to include: Facebook
(93% of the worlds companies have a Facebook page, as
do States, cities, counties and the Federal Government);
YouTube (3.25 billion hours watched per month, more
than all 5 networks combined (CBS, ABC, NBC, Fox, CW)); and
Instagram (500 million users); etc. Furthermore, condition
#4 specifically states "... must not prohibit lawful internet
use...", I assume that includes social media, correct?

Just to be clear, I completely understand that

18

Packingham decision by the Supreme Court does not apply to those on supervised release. However, the fact that the Supreme Court has found that social media access is a First Amendment fundamental right (much like access to adult pornography is also a First Amendment fundamental right) which to be restricted, needs to be determined by the court, and cannot be determined by the P.O.

For the P.O. to impose a blanket restriction to everyone the CIMP is subject to, and denying access to social media, without the same scrutiny as other imposed conditions that affect significant fundamental rights or liberties, is an impermissable delegation of authority, imposed without judicial due process, on-the-record, individualized assessment.

In Ullmann, footnote #3 quotes "But even in Vinson, we concluded that such a condition was acceptable only if properly implemented so as minimally intrude on Vinison's liberty, for, by, example, filtering rather then prohibiting his internet access." See United States v. Vinson, 147 Fed Appx. 763 (10th Cir. 2005)(20 years ago when social media was in its infancy - my emphasis).

In United States v. Blair, 933 F.3d 1271 (10th Cir. 2019), my condition reads almost the same, which was ruled to be over broad. The fact that the P.O. banned a means of communication, commerce, and information gathering,

19

is a greater deprivation of liberty than reasonably necessary, and of which can be easily monitored and inspected by the P.O. See: United States v. Ullmann, 788 F.3d 1260, 1261 (10ᵗʰ Cir. 2015)

     United States v. Hansen, 929 F.3d 1238, 1254 (10ᵗʰ Cir. 2019)

     Carter v. Bigelow, 787 F.3d 1269, 1280 (10ᵗʰ Cir. 2015)

    Therefore, the CIMP denial of social media needs to be removed, and remove that impermissable authority from the P.O., leaving the court to implement social media restrictions if the record-of-fact indicates social media was a major factor, or which specific sites must be denied due to past criminal involvement, if none are found, than no restrictions should be in place by the court, or the P.O.

     G) P.O. imposed "Occupational restrictions"

    The imposition of occupational restrictions (ordering and mandating my employer to install the P.O.'s monitoring software on employer-owned computers and denying me employer-owned and issued/work related cell phone (tools), required that I notified my employer of my crime and charge, forcing me removal from work site's on two occasions by the P.O., is only limited to circumstances where "a reasonably direct relationship existed between the defendant's occupation, business, or profession and the conduct relevant to the offense of conviction." U.S.S.G. § 5F1.5(a).

    In light of the limitations set fourth in section 5F1.5(a),

the P.O. stepped outside their deligation of authority by taking upon themselves to impose these occupational restriction without the courts authority.

"The Probation office could not put monitoring software on an employers computer because it exceeds the Fourth Amendment privilage of the employer." United States v. Mike, 632 F.3d 686 (10th Cir 2011).

The relationship between these imposed restrictions and denials to my employer and employer's devices, the tools I may use and my offense is not apparent. There is no history, on-the-record findings, or fact that shows that I have ever used a work place computer, cell phone, or other device issued by an employer to access child pornography.

Additionally, the P.O. required me in the course of employment, to notify perspective employers about my convichion. This requirement has and will lead to a conversation between the P.O. and my future employer and would presumably result in my disclosure of supervision. This notification is considered an occupational restriction. See U.S.S.G. § 5F1.5

There is no occupational restriction condition listed on my special conditions of supervised release. By requiring a §5F1.5 disclosure by the P.O. is an impermissable delegation of authority of the P.O.

A sentencing court may impose an occupational restriction only if it determines that there is a "reasonable

21

direct relationship" between the defendants occupation and
the defendants offense. Specifically, there is not self-
evidence on the record that my crime was ever connected
to my occupation, employment or employer. See United States
v. Love, 24-1706-CR (2nd Cir Apr 8 2025)

By forcing an employer to install and monitor a
device owned by the employer, or not allowing me the use
of employer-provided tools in the course of employment
creates an occupational restriction that potentially renders
me "unemployable" and the district court did not Justify
a condition or restriction. And it is not otherwise "obvious
from the record" that an employer-owned device was
ever used in my criminal activity.

In any employment I encounter, it is highly
unlikely that upon my release I will encounter employment
which does not somehow allow me access to a computer
or company-issued smart phone. (my last employer issued
a required smart phone as part of my Job responsibilities,
which the P.O. denied, and because of this I was not
able to fully perform my work duties and created
many difficulties for my employer, my co-workers, and
for me, affecting my responsibilites and efficiency.) See
Cabral at 687; United States v. Williams, No 18-6018 (10th Cir.
2018)

Furthermore, the P.O. intentionally removed me,
<u>22</u>

on two seperate occasions, from remote job sites (different
cities) in the middle of my work day, with clients and
without notice to my employer or myself, to require me
to meet him at my home for a home inspection, and be
there in a specific time frame. This obtuse action impeeded
me maintaining of my job duties, forced my employer
to find another employee with no notice, and for me to
abandon a client, hindering the project, affect the relation-
ship with the client, cost my employer time, money, and
unnecessary resources, to meet the P.O.'s demand.

The P.O. gave me and my employer an ultimatum:
Comply with this demand, lose money, time and potential
relationships with the client, pull another employee from
another job, so now two clients are affected ; I've lost
wages, and caused my employer to question him hiring me
because of my P.O. demand.

If I failed to comply, I would get a violation,
lose my job, potential jail time, lose employer
endorsement for future employment, by the past employer.

Essentially, this action caused me to _NOT_
maintain my employment under §5F1.5, creating a employer/employee
occupational restriction imposed by the P.O.

"... given the required scrutiny which we give to
occupational restrictions, we conclude we must vacate the
occupational restriction relating to computer use and monitoring,

<u>23</u>

including making the findings required before imposition of
any occupational restriction." United States v. Dunn, 777 F.3d
1171 (10th Cir. 2015) (quoting United States v. Sunday, 447
Fed. Appx. 885, 889-90 (10th Cir. 2012) (unpublished). This
includes obstruction of work-related duties and tasks performed.

## D) REQUESTED RELIEF

Suggested re-wording (modify) of conditions # 4 and
#6 of Special Conditions:

1) new condition #4: "Except as required for employment,
you shall not use, purchase, possess or otherwise obtain
any personal internet-connected device that does not have
or have the capability to have monitoring software/hardware
installed on those device(s), excluding the following:
Smart TV's; Streaming devices i.e. Roku, Apple TV, Amazon
Fire stick etc.; Internet Of Things i.e. appliances, home security,
vehicles, etc.; Smart-connected devices i.e. Fit Bit, headphones,
health devices, watches, etc.; gaming consoles i.e. Playstation, XBOX,
Nintendo, etc."

2) new condition # 6: "Defendant may use any device required
for employment without Probation's approval. And I may use
any device(s) for non-employment (personal) use with approved
monitoring software/hardware installed and operational. Additionally,
the "excluded" list of devices in Condition #4 can be inspected,
searched, or surrendered if reasonable suspicion of illegal activity

24

is taking place, or inapporiate communication is suspected. The
monitored devices can be searched/inspected at any time,
with or without suspicion. The Probation Office shall not
prohibit lawful website/internet/social media use and
the use of mobile applications. These websites, internet
history and mobile apps can be searched/inspected at
any time, by the Probation Office upon request."

The modifications of Condition #4 and #6 fulfills the
requirements and are consistent, narrowly tailored, individualized
based on my history and characteristics and relationship
to my crime and violation. They are clear, concise, and
not more than reasonably necessary, or infringe on Fundamental
Rights of the First, Fourth, and Fifth Amendment, or §5F1.5

These conditions permit me to use any device(s) needed
for employment and do not create a "occupational restriction";
~~and effectively protect~~ the public and prevent further
criminal activity, and allow effective monitoring or search
of any device I choose to have as long as it can be
monitored, and allows me lawful access to internet websites
and social media.

E) CONCLUSION

"This court has stated that "a district court's duty to
specifically find that a restriction is minimally restrictive is

25

mandatory, and has consistently vacated conditions that interfere
with a defendant"... United States v. Dunn, 777 F.3d 1171 (10ᵗʰ Cir. 2015)
"Where a broad condition of supervised release is ambiguous and
could read as restricting a significant liberty interest, we construe
the condition narrowly so as to avoid affecting that significant
liberty interest." United States v. Bear, 769 F.3d 1221, 1230
(10ᵗʰ Cir. 2014).

    The tailoring of the computer monitoring conditions is to
suit the offender and the monitoring to be precisely targeted
to and bear a close and substantial relation to the Governments
interest in pursuing the search "of information on the offenders
electronic devices", and does not extend to those not on supervised
release i.e., the employer, the family, friends or co-workers.

    It should be noted that the technological improvements
to Probations monitoring capabilities have enhanced it's ability
to monitor multiple devices simultaneously, a fact the district
court may not be aware of. See AJMonitoring capabilities
(the third-party contracted monitoring service the Denver P.O.
uses.) at AJMonitoring.com

    Neither the Government nor the district court
identified anything on my record (original offense and violation)
to suggest that social media, a smart TV, gaming console,
employment, employer, occupation, employer devices, "monitored"
devices (violation was with an "unmonitored" device) or the
lawful internet (original crime was on the "Dark Web" with

26

a specific web browser "TOR") contributed to my crime; or
would increase the likelihood of reoffending or from not
progressing in treatment. While the record documents at
length my access to child pornography found on my "single device"
It was clearly obtained from the "Dark Web" via "illegal" sites.
There is no indication then or now that "legal web sites"
or social media, or a Smart TV, gaming console, streaming
device, or employment owned device were ever used to obtain
child pornography. Further and with emphasis, I have not
escalated my culpability or risk, nor have I ever made or attempted to make
contacts with minors, communicated with minors in any
way, or sought out, enticed or groomed any minors or acted
inappropriately around minors; again - emphasis added!

     My record is devoid of any basis to support
the P.O.'s restriction to "legal internet", social media,
smart TV's, monitored smart phones (computers) or ties to
~~any employment or employer devices.~~

     I do not know if the Court knows to the
extent the P.O. imposed their restrictions, conditions and
infringements of my fundamental rights upon me, without
due process or the Courts order. From risk notifications, denial
access to my own home, employment barriers, and impermissable
delegation of authority.

     "This court has in at least three seperate
cases over the last several years, vacated special conditions

<u>27</u>

that touch on constitutional rights for lack of adequatley supportive findings," United States v. Koch, 978 F.3d 719 (10ᵗʰ Cir. 2020) (quoting Dunn); Burns, 775 F.3d at 1223-25.

I further request the Court to inform the P.O. that I am not subject to occupational restrictions, restrictions to my home, or third-party notification. I'm allowed to have monitored devices, connected I.O.T. devices, smart phone(s), smart TVs and to attend SAA meetings.

If the Court feels an oral argument is needed at sentencing regarding this objection, I accept under Fed. R. 32.1 to further support this written objection.

The specific issues I bring forth are not contingent, as the P.O. imposed these restrictions on my previous term and I believe the P.O. will again impose them on my next, immediately upon my release. Because of this, I will have a direct and immediate dilemma. See United States v. Rosas, 23-2085 (10ᵗʰ Cir. 2024).

To support my objection see: United States v. Mike, 632 F.3d 686, 694 (10ᵗʰ Cir. 2011); United States v. Kunz, 68 F.4ᵗʰ 748, 762 (2nd Cir. 2023); United States v. Cabral, 926 F.3d 687 (10ᵗʰ Cir. 2019); United States v. Hull, 893 F.3d 1221 (10ᵗʰ Cir. 2018); United States v. Matta, 777 F.3d 116, 123 (2d Cir. 2015); United States v. Hansen, 929 F.3d 1238 (10ᵗʰ Cir. 2019); Koch footnote #3; United States v. Love, 24-1706-CR (2nd Cir. Apr. 8, 2025).

Furthermore - "it is always in the publics interest to prevent the violation of a partys constitutional rights." See, e.g., Connection Distributing, Co v. Reno, 154 F.3d 281, 288 (6ᵗʰ Cir. 1998 (First Amendment support)"... even in the pursuit of the

28

the most worthy of goals, the government may not unduly
burden free speech." Id.

In regards to access to "lawful internet" and my
denial to social media (free speech), "burdens substantially
more speech than necessary to achieve it's professed goal..."; "It is true that the interest of protecting children may not
always justify limitations on the First Amendment rights of
Adults, and the government is not excused from tailoring
requirements merely because the interest of children are
involved." Id.

These platforms are legal, legitamate, private enterprizes,
not Governmental or even quasi-govermental entities. No one has
an obligation to contribute to or consume the content that the
platforms make available. By allowing the P.O. to deny me
access to legal internet/websites is denying me access via
governmental efforts. To reiterate, I have no history or
connection of using Social Media in the commission or violation
of my crime, and the imposed condition allows me "lawful
internet use".

Do you restrict a bank robber from opening up a
bank account? How about a auto theif restrictions of
using a car? Or a robber of a 7-11 restricted access to
gas stations? Or a drug user from going to a pharmacy?
Or a drug dealer who used the internet or social media to sell
drugs (they most likely do not have internet restrictions). My crime

29

took place with "illegal" websites on the "Dark Web" and on a
un-monitored device, why am I denied access to "legal websites,"
or use of a "monitored smart phone"? Accordingly, before a
Court may impose a special condition or a standard condition
that is not mandatory, infringing on those rights, it must
set forth, on-the-record, defendant specific findings that show
a compelling interest. United States v. Englehart, 22 F. 4th 1197,
1207-08 (10th Cir. 2022). Therefore I submit my Anticipatory
Motion to object to re-imposed or imposed conditions to modify, and
clarify my standard and special conditions of supervised release,
as outlined in this motion, thanking you for your review.

         I, Joel Thomas, Defendant, submitting this Motion
Pro Se from the Scotts Bluff County Detention Center, 2522
7th Street, Gering, NE 69341, via United States Postal Service
Legal Mail on April 28, 2025, to the 10th Circuit Court,
District of Colorado, Attn: Hon. Judge C. Sweeney

         I certify all true of fact: April 28, 2025

                                    Joel Thomas
                                    Defendant - Pro Se

30

- LEGAL MAIL - 2ote
SBLDC NE
28 APR 2025

J. Thomas -075876
SBLDC
2522 7th St
Gering, NE 69341

Federal Courthouse
United States 10th Cir. Courthouse - Dist of Colorado
Court Clerk
Attn: Hon. Judge C. Sweeney
1929 Stout Street
Denver, CO 80294



80294$0003

THIS ENVELOPE IS RECYCLABLE AND MADE WITH 30% POST CONSUMER CONTENT

© USPS 2019

USA ★ FOREVER